CLEVELAND-SANDUSKY BREWING CORP., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63466. Filed June 9, 1958.

*Edward C. Crouch, Esq.*, for the petitioner.
*L. Robert Leisner, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioner's income tax in the amount of $106.81 for the fiscal year ended March 31, 1949, and in the amount of $12,835.97 for the fiscal year ended March 31, 1950. The issues are (1) whether the basis of certain property held by the petitioner in these years should be adjusted, for the purposes of computing depreciation and gain or loss from the sale of such property, for obsolescence in 1918 due to national prohibition legislation; (2) whether petitioner is entitled to a higher basis with respect to a 1950 sale of land than the basis allowed by the respondent; and (3) whether a cabin cruiser owned by the petitioner

was used exclusively for business purposes during the fiscal years 1949 and 1950.

FINDINGS OF FACT.

The Cleveland & Sandusky Brewing Company (by change of name, subject taxpayer), hereinafter called the petitioner, was organized under the laws of Ohio on February 8, 1898. It filed its income tax returns for the fiscal years 1949 and 1950 with the then collector of internal revenue for the eighteenth district of Ohio.

In May 1898 the petitioner purchased the brewing plants and properties of 9 breweries—8 located in Cleveland, Ohio, and 1 located in Sandusky, Ohio. In 1902 the Schlather Brewery in Cleveland was purchased; in 1904 the Lorain Brewery, in Lorain, Ohio, was purchased; and in 1907 the Fishel Brewery in Cleveland was purchased. Ten of these breweries, including the Schlather Brewery, were in operation on January 31, 1918, the date when national prohibition legislation affecting all brewery properties was passed. This legislation was to become effective on or before January 16, 1920, depending upon the dates in the interim when State legislatures would make prohibition effective in the various States. The legislature of the State of Ohio made prohibition effective in Ohio on June 1, 1919, and after that date the petitioner was prohibited from brewing and selling alcoholic beverages.

In its return for the calendar year 1918 the petitioner claimed a deduction of $531,914.82 for obsolescence to buildings, equipment, and other properties as a result of prohibition. In its return for the calendar year 1919 the petitioner claimed a deduction of $108,407.37 for obsolescence to buildings, equipment, and other properties as a result of prohibition, making a total of $640,322.19 claimed as an obsolescence deduction for the 2 years. Petitioner's returns for 1918 and 1919 were examined by revenue agents and in a report of the respondent under date of August 18, 1922, the total obsolescence of $640,322.19 was reapportioned between the 2 years, with $440,221.51 being allocated to 1918 instead of $531,914.82, and with the 1919 obsolescence being increased by $91,693.31.

A further examination of the petitioner's returns for 1918 and 1919 was made and in a report dated March 3, 1924, the petitioner was granted an additional allowance for obsolescence of goodwill in the amount of $200,277.83 for the year 1918. A certificate of overassessment was issued for the year 1918 and the year was closed. In October 1925, the petitioner protested the assessment for 1919 as set forth in the report of March 3, 1924, and filed a claim for additional obsolescence for the year 1919 in the sum of $808,087.87. This matter was appealed by the petitioner to the Board of Tax Appeals. The case (Docket No. 34448) was settled in 1933, based upon a statement pre-

pared by the Bureau of Internal Revenue dated September 25, 1933. The respondent, in the statement, concluded that there was a total obsolescence of petitioner's property for the 1918–1919 period due to prohibition in the amount of $1,434,131.98, and that 45 per cent of this amount, or $645,359.39, was applicable to the year 1919. A certificate of overassessment was issued on November 21, 1933, based upon the computations in the respondent's statement of September 25, 1933, and the year 1919 was closed. The petitioner entered on its books and records the obsolescence allowed in the statement of September 25, 1933, for the year 1919, but no additional obsolescence to buildings, machinery, or other property was entered by the petitioner on its books for the year 1918.

Petitioner, in its returns for the fiscal years 1949 and 1950, claimed depreciation deductions for the Schlather Brewery buildings in the amounts of $3,259.47 and $1,679.74, respectively, computed upon a depreciated basis of these buildings, on April 1, 1948, in the amount of $39,935.40. In fiscal year 1950 these buildings were sold and the petitioner reported a gain of $18,382.34 from such sale, based upon an adjusted basis for the buildings of $35,296.19. Respondent, in his notice of deficiency, determined that additional obsolescence to petitioner's properties was allowed or allowable for the year 1918 in the amount of $788,772.59 and that the depreciated basis of the Schlather Brewery buildings owned by petitioner (or its subsidiary) on April 1, 1948, was zero. Respondent disallowed the depreciation claimed by the petitioner on said buildings during the fiscal years 1949 and 1950 and determined that the gain on the sale of such buildings and property during the fiscal year 1950 was $53,678.53.

Paragraph 11 of the stipulation provides as follows:

At the time the petitioner purchased the properties of nine breweries in May, 1898, the petitioner acquired the land of the Cleveland Brewery Company located at Ansel Road and Hough Avenue in Cleveland, Ohio at a cost of $32,820.25. This land consisted of four parcels, as follows:

| Location | Acreage |
|---|---|
| Main Brewery Site—North Side Ansel Rd | 1.085 |
| Old Stables Site—South Side Ansel Rd | .430 |
| Northwest corner, Ansel Rd. and Hough Ave | .054 |
| Triangle parcel, Ansel and Hough Intersection | .062 |
| Total | 1.631 |

In 1922 the Triangle parcel was sold for $21,500.00, and the sale price was credited against the cost of the land. In 1933, .042 acres of the main brewery site was disposed of for a consideration of $5,000.00, which was credited against the cost of the land. In 1937, the old stables site was disposed of for taxes, leaving a balance of 1.097 acres of the Cleveland Brewery land owned by the petitioner at the beginning of its taxable year April 1, 1949–March 31, 1950. During said taxable year, the petitioner sold .2164 acres of the main brewery site for $2,719.34. The petitioner, in reporting this sale on its return, allocated

the original cost of the total property ($32,820.25) over the entire acreage (1. 631) and claimed an adjusted basis for the .2164 acres sold of $4,354.57, and further claimed a loss of $1,635.23. The petitioner allocated the original cost of the land, without taking into account recoveries from prior sales which were credited against cost. The respondent determined that the petitioner had credited recoveries on prior sales against the original cost and only the balance of original cost unrecovered could be allocated over the land remaining to be sold in 1950 and thereafter.

During the fiscal years ending March 31, 1949 and 1950, the petitioner owned a cabin cruiser. During the fiscal year 1949 the petitioner expended $5,079.83 in the operation of this cruiser, which it claimed as a deduction for that year, and petitioner also claimed a depreciation deduction on the cruiser in the amount of $1,642.27. The respondent disallowed $2,579.83 of the expense deduction. In the fiscal year 1950 the petitioner expended $2,116.86 in the operation of the cruiser, which it claimed as a deduction for that year, and petitioner also claimed a depreciation deduction on the cruiser in the amount of $1,642.27. The respondent disallowed $1,116.86 of the expense deduction.

The cabin cruiser owned by the petitioner in the fiscal years 1949 and 1950 was used exclusively for business purposes and all the expenses of operation were ordinary and necessary business expenses.

### OPINION.

In the stipulation filed in this case it is stated: "Petitioner and respondent concede that the only issue involved in this proceeding relative to depreciation and gain on the sale of the Schlather property is whether or not additional obsolescence was allowed or allowable for the year 1918 in the amount of $788,772.59."

Section 113 (b) (1) (B) of the Internal Revenue Code of 1939 provides that adjustment shall in all cases be made to the basis of property in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed but not less than the amount allowable. The statute is clear that an adjustment must be made for the amount of obsolescence "allowable," whether or not such amount was ever claimed by the taxpayer. See *Virginian Hotel Corporation of Lynchburg* v. *Helvering*, 319 U. S. 523.

It is admitted that petitioner, a brewery engaged in the business of brewing ale and beer, suffered obsolescence to its buildings, equipment, and other properties when the Eighteenth Amendment to the Constitution of the United States became effective. Both parties realized the proper method of taking the obsolescence was by spreading the total obsolescence, caused by prohibition legislation, over the entire period from January 31, 1918, when it was known that prohibition would become effective, and ending June 1, 1919, the date it did become effective in Ohio. In its 1918 and 1919 income tax returns

petitioner claimed total obsolescence because of national prohibition in the sum of $640,322.19, which it apportioned between the years 1918 and 1919 in the amounts of $531,914.82 for 1918 and $108,407.37 for the year 1919. In 1922 these returns were examined by respondent's agents and respondent made no change in the total amount of obsolescence claimed in these two returns for the 1918–1919 period ($640,-322.19) but he reapportioned the amounts as between the years, allocating $11/16$, or $440,221.51 to the year 1918, instead of $531,914.82, and the balance, or $5/16$ to 1919. Subsequently, in 1924, respondent granted to the petitioner an additional allowance for obsolescence of goodwill for the year 1918 and a certificate of overassessment was issued and the year 1918 was closed.

We come now to the evidence which, respondent argues, shows that an additional amount of obsolescence was allowable for the year 1918. In 1925, when the year 1919 was still open, petitioner filed a claim for additional obsolescence for the year 1919. In this claim it apparently claimed a total obsolescence of $1,798,542.94 for the years 1918 and 1919, allocating $990,455.07 to 1918 and $808,087.87 to 1919. This is shown by certain exhibits in evidence consisting of a letter from petitioner's attorney in 1933 in which reference is made to an appraisal report of the American Appraisal Company filed with the Commissioner at a prior date. This appraisal report, which petitioner filed with respondent to substantiate its claim for additional obsolescence in 1919 in the sum of $808,087.87, shows the appraisal company's computation of total obsolescence for the 1918–1919 period in the sum of $1,798,542.94 and the appraisal company's allocation of $990,455.07 to the year 1918, and the balance, or $808,087.87, to the year 1919.

The dispute was finally settled in 1933 when the respondent determined that the total obsolescence for the 1918–1919 period was $1,434,131.98 and allocated $645,359.39 to 1919. The obvious implication was that the balance, or $788,772.59, was allocated to 1918. On this basis, the year 1919 was closed. The fact that petitioner did not enter the latter amount on its books for 1918 is immaterial. When the settlement was reached in 1933, the year 1918 was closed, and the fact that the petitioner did not feel compelled to make an entry of obsolescence for the closed year cannot eliminate the fact that such amount was allowable for that year. Both the respondent and the petitioner were aware of the necessity for allocating the total obsolescence over the years 1918 and 1919. The 2 years, consequently, were linked in any determination of the proper allocation of total obsolescence. Petitioner accepted the total obsolescence determined by the respondent for the purpose of closing the year 1919.

It is difficult to understand how the petitioner can accept the 1919 portion of the total obsolescence figure as correct and then object to the 1918 portion of the total figure. It is also significant that in its

own application for additional obsolescence the petitioner claimed a much larger figure for the year 1918 than the one finally determined by the respondent. We hold that the amount of $788,772.59 was "allowable" obsolescence for the year 1918.

The next issue involves the correct adjusted basis of land sold by petitioner in the fiscal year 1950. In the trial of this case counsel for petitioner stated that all of the evidence with respect to this issue was contained in the stipulation of facts, with the exception of petitioner's income tax returns for 1922 and 1933. These returns were produced by respondent and admitted in evidence.

In our Findings of Fact we have quoted paragraph 11 of the stipulation which contains all of the stipulated facts applicable to this issue. The stipulation shows that petitioner in 1898 purchased land in Cleveland at a cost of $32,820.25. This land consisted of four parcels which were the main brewery site (1.085 acres on the north side of Ansel Road), the old stables site (0.430 acres on the south side of Ansel Road), the northwest corner of Ansel Road and Hough Avenue (0.054 acres), and the triangle parcel (0.062 acres at the Ansel and Hough intersection). In 1922 petitioner sold the triangle parcel for $21,500; in 1933, 0.042 acres of the main brewery site were disposed of for $5,000 and in 1937 the old stables site was disposed of for taxes, leaving a balance of 1.097 acres of this land owned by the petitioner at the beginning of the fiscal year 1950. In each instance the sales price of the parcels sold was credited against the cost of the land and no gain was reported on such sales. In the fiscal year 1950 the petitioner sold 0.2164 acres of the main brewery site for $2,719.34. In reporting this sale petitioner first determined a cost basis for each parcel by dividing the total cost of the four parcels by the original acreage in each separate parcel. In this manner petitioner determined the cost basis for the main brewery site parcel. Petitioner then determined the cost basis for the land sold from this parcel by dividing the above cost basis in the main brewery site parcel by the acreage sold. By this method petitioner arrived at a basis for the land sold of $4,354.57 and petitioner claimed a loss from the sale in the amount of $1,635.23. Respondent determined that only the unrecovered balance of the original cost of the land should be allocated over the remaining land and on this assumption determined that the petitioner realized a gain in the fiscal year 1950.

There is here no question of concealment or misrepresentation in the prior years and consequently there is no room for any argument of technical estoppel. Respondent argues that the petitioner in the prior years elected a particular method of treating the proceeds from the sales and is, therefore, bound to continue. We are unaware of any such opportunity, under the applicable statutes and regulations, for any election given to the petitioner. *Pancoast Hotel Co.*, 2 T. C.

362. Nor do we think that the petitioner, under these facts, is bound by any duty of consistency. *American Light & Traction Co.*, 42 B. T. A. 1121, affd. 125 F. 2d 365. We think it is clear that the proper treatment, when the first sale was made in 1922, would have been to allocate the total cost among the four parcels on the basis of the separate cost of each or on the basis of the fair market value of each parcel if a lump sum were paid for the four and thus arrive at a basis for each separate parcel to be used in the computation of gain or loss. *William T. Piper*, 5 T. C. 1104.

However, there is insufficient information in the record to permit us to make the necessary allocation among the parcels. As we pointed out above, the established rule is that such allocation of the original lump-sum cost must be made on the basis of the fair market value of each of the parcels. We are not given this information. We gather from the stipulation and from the brief that these parcels were located at the intersection of Hough Avenue and Ansel Road in Cleveland. We cannot assume that the fair market value of these separate parcels, situated on different sides of the streets, was so similar that an allocation could be made, as petitioner concludes, merely on the basis of acreage. Petitioner's brief states that at the time of purchase these parcels were improved by buildings which were subsequently torn down by the petitioner. Obviously, if a correct allocation were to be made, the total basis must be allocated between the land and the depreciable improvements. As far as we can tell, this was never done. In view of the paucity of the evidence, we consider it impossible to make the necessary allocation of the original cost basis among the several parcels of land. Respondent gave the land sold in 1950 a cost basis of $1,246.76. Petitioner's evidence is insufficient to show it had a higher basis. We affirm the respondent.

One reason for the lack of evidence on this point is indicated by petitioner's desire to have the 1922 and 1930 income tax returns added to the stipulated facts. They show petitioner had net losses those years and it probably received no tax benefit from its erroneous treatment of its prior sales from three of the parcels. Petitioner's entire argument on this issue is that because it received no tax benefit, because of its erroneous treatment of the prior sales, it should have the right to report the 1950 sale correctly. Whether or not petitioner received a tax benefit in the years it incorrectly reported its prior sales, is immaterial. We agree it had the right to report its 1950 sale correctly but, as pointed out earlier, the evidence is insufficient upon which to make a determination of cost basis.

During the fiscal years 1949 and 1950 the petitioner owned a cabin cruiser. In the fiscal year 1949 petitioner claimed a deduction of $5,079.83 under section 23 (a) of the Internal Revenue Code of 1939

for the operation of this cruiser and also claimed a depreciation deduction of $1,642.27. Respondent disallowed $2,579.83 of the deduction for operational expenses. In the fiscal year 1950 the petitioner claimed a deduction of $2,116.86 for the operation of the cruiser and also claimed a depreciation deduction of $1,642.27. Respondent disallowed $1,116.86 of the deduction for operational expenses. We think that the petitioner has carried its burden of proving that the cruiser was used entirely for business purposes. Marshman, the president of the petitioner during the years 1949 and 1950, testified that the cruiser was used solely to hold sales meetings and to entertain customers and distributors. It was especially necessary to own a cruiser for these purposes since the petitioner's plant was located in a slum area where it was not feasible to conduct the sales meetings or to meet with distributors and customers. Marshman's testimony was that there was a constant need to generate goodwill in the business of distributing beer and to persuade distributors to push the petitioner's product. The cruiser was used for these purposes. Marshman testified that "we had ten salesmen in the city and 2500 accounts. One salesman would have 200, one 280, and so forth. He was assigned the boat to entertain one week or one weekend and Wednesday they always entertained take out store owners because they closed on that day." Marshman also testified that the cruiser was "used only for corporate purposes, business purposes, entertaining, a place for meetings of the distributors * * *. Customarily on weekends they took a group of distributors or take out people or large dealers fishing down to the islands if the weather permitted." We are convinced that the cruiser was used solely for business purposes and consequently hold that the respondent erred in disallowing a portion of the operational expense deduction claimed by the petitioner under section 23 (a).

*Decision will be entered under Rule 50.*