FAIRFIELD PLAZA, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88304.   Filed January 23, 1963.

---

*John E. Jenkins, Jr., Esq.*, and *C. Robert Schaub, Esq.*, for the petitioner.
*Dennis J. Fox, Esq.*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in income taxes of the petitioner for the years 1957 and 1958 in the amounts of $413.74 and $17,669.70, respectively.

We are called upon to determine (1) the proper allocation of the basis of a single tract of real estate to two portions of that tract, one of which was sold in 1957, the other in 1958, and (2) whether any part of an amount of $50,000 placed in escrow for improvements to the retained center portion, or the $40,146.32 actually expended for such improvements, is allocable to the basis of the parcel sold in 1957 or to the basis of that parcel and the parcel sold in 1958.

### FINDINGS OF FACT.

The parties have stipulated certain facts. The stipulation and exhibits attached thereto are incorporated herein by this reference.

Petitioner is a West Virginia corporation, organized on March 31, 1955, with its principal office in the city of Huntington, Cabell County, W. Va. Petitioner's income tax returns for the taxable years 1957 and 1958 were filed with the district director of internal revenue, Parkersburg, W. Va.

S. Grady Risen, secretary-treasurer and one of the principal stockholders of petitioner, has been in the real estate business in Huntington since 1927. Prior to petitioner's incorporation, Risen had become familiar with a tract of land of approximately 10 acres, lying between 16th and 17th Streets in Huntington, occupied by the West Virginia Paving & Pressed Brick Co. On or about October 15, 1954, Risen had an aerial photograph made of the property. On April 13, 1955, 13 days after its incorporation, petitioner purchased the entire tract occupied by the brickyard, consisting of 453,921 square feet. After purchasing the tract, petitioner intended to develop it into a drive-in shopping center.

Total cost of the entire shopping center, including development expenditures, was as follows:

| | |
|---|---|
| Real estate | $100,000.00 |
| Commissions | 5,000.00 |
| Interest | 4,500.00 |
| Taxes | 420.08 |
| Legal | 820.00 |
| Insurance | 201.04 |
| Grading | 23,016.80 |
| Engineering | 705.73 |
| Additional costs, 1957 | 8,856.72 |
| Miscellaneous | 23.50 |
| Total | 143,543.87 |
| Less: Credits, rebates, and scrap sales | 3,018.11 |
| Total | 140,525.76 |

In 1955, when petitioner purchased the shopping center, an excavation was located on the eastern two-thirds of the tract near the southern edge, where the brick company had been extracting clay. On the western portion of the tract were located the six kilns, plant, brick shed, and office building of the brick company, covering approximately one-third of the tract. No buildings were located on the other two-thirds of the property.

In line with its plan of developing a drive-in shopping center, petitioner graded the entire tract. In the process, the excavation made by the brick company was filled in with dirt removed from high portions of the tract. All of the brick company's buildings were removed, and the tract was made level except for a narrow hill area along a portion of the southern edge.

The grading and leveling was completed in 1956, at a total cost of $23,016.80.

Petitioner believed that the use for which the property was best suited was a shopping center, although one other use was considered. As a part of its plan of development, petitioner hired an engineer to prepare maps outlining the uses of various parts of the property as a shopping center. Certain areas were set aside for buildings, for parking, and for entrances and exits. Petitioner intended to erect the store buildings, complete the necessary paving and lighting, and then rent the buildings to tenants.

Prior to the summer of 1956, petitioner entered into negotiations with the Big Bear Stores Co., hereinafter sometimes called Big Bear, for the leasing of a portion of the tract fronting on 17th Street. Petitioner encountered difficulty in obtaining financing for the building to be constructed for Big Bear, and in May 1957 Big Bear offered to buy outright that portion of the tract.

By a deed dated June 17, 1957, petitioner conveyed 126,611.47 square feet of the easterly portion of the tract to Big Bear for $100,000. Of this purchase price, $50,000 was held in an escrow account pending completion of paving and lighting to be performed by petitioner on the remainder of the tract not sold to Big Bear.

On petitioner's income tax return for the year 1957, a cost basis of $91,237.25 was allocated to the Big Bear tract. Petitioner calculated such basis by computing pro rata land cost at 33 cents per square foot for a total of $41,237.25 and by adding the escrow fund of $50,000 to cost.

The respondent, in his notice of deficiency, determined that the escrow fund was not an allowable addition to petitioner's cost basis of the Big Bear tract, and further determined that the correct cost basis of said tract was $38,738.74, or 27.567 percent of the cost of the total tract.

In the summer of 1957, following the sale of the Big Bear tract, petitioner deeded, without charge, a strip of its western frontage on 16th Street amounting to 16,526 square feet, to the State Road Commission of West Virginia. Such gift of land was made so that the State could widen 16th Street along the western end of the tract, thus providing easier access to the shopping center. Such widening was completed prior to June 14, 1958.

After the sale to Big Bear, petitioner still intended to retain ownership of the remainder of the shopping center, and to construct and lease stores thereon.

Despite such intention, petitioner, by deed dated June 16, 1958, sold the western portion of the shopping center, hereinafter sometimes called the Paisley tract, consisting of 128,937 square feet, to Orion M. Paisley, Walter F. Williams, and Herman E. Martin for $150,000.

The sales price of the Paisley tract was 150 percent of the sales price of the Big Bear tract. The tracts were substantially equivalent in size. In preparing petitioner's income tax return for the year 1958, Grady Risen calculated cost basis of the Paisley tract at 50 cents per square foot, or $64,468.80.

The respondent, in his notice of deficiency, determined that the correct cost basis of the Paisley tract was $43,481.48, or 30.942 percent of the original cost, plus $1,320.85 of additional costs incurred in 1958, for a total of $44,802.33.

In its deeds to Big Bear and Paisley, petitioner granted travel and parking easements across its retained tract, to each grantee. In each deed petitioner reserved equivalent easements for travel and parking across the property conveyed to Big Bear and Paisley. Each deed recited the intention of the petitioner to operate the drive-in shopping center as a unit, and required each grantee to maintain uniform paving

and lighting, keep such areas in repair, and confine all buildings to the areas designated on maps attached to each deed. Without easements, petitioner had no access to the retained center parcel.

Between June 1957, when the Big Bear tract was sold, and June 1958, when the Paisley tract was sold, petitioner added $4,710.03 to its land development account. The record does not reveal how much of such figure represented costs incurred separately as to each of the two remaining tracts, nor how much was incurred in connection with both portions as a unit, nor the amount expended in 1957 and the amount expended in 1958, nor the amounts involved in the items claimed by petitioner to constitute the $4,710.03.

In his notice of deficiency respondent determined that petitioner's allowable basis of the Paisley tract included $1,320.85 of additional costs incurred in 1958.

In connection with the sale of the Paisley tract, petitioner incurred expenses of $8,503.94, which were reported as expenses of sale on its 1958 income tax return. Respondent has allowed such expenses of sale in full.

By the time the paving and lighting on petitioner's retained tract commenced, as specified in the escrow agreement with Big Bear, petitioner had already sold the Paisley tract, under a deed obligating Paisley to pave and light its own portion of the shopping center.

Both Big Bear and Paisley paved and illuminated their own respective tracts, as required in the deeds by which petitioner conveyed each parcel to them. Petitioner paved and illuminated only the retained tract.

Petitioner did not know what the cost of its own paving and lighting would be until the year 1958. No contracts for the performance of such work had been entered into prior to such year. In December 1958 and January 1959, petitioner paid $40,146.32 to various contractors in payment of the paving and lighting on its retained tract.

On its 1957 income tax return, petitioner included, as part of the proceeds of the Big Bear sale, the $50,000 fund held in escrow. Such fund was not released to petitioner until December 23, 1958.

As of January 1 of each of the following years the following assessed valuations were carried on the land books and records of the office of the Cabell County assessor:

*1957*

Fairfield Plaza land_____ $25,200.00 (entire tract).

*1958*

Fairfield Plaza land_____ $25,200.00 (less Big Bear tract).
Big Bear land_____ $27,500.00.

*1959*

Fairfield Plaza land_____ $49, 320. 00 (less Big Bear and Paisley
                                                                    tracts).

Big Bear land_____ $32, 770. 00.

Paisley land_____ $36, 780. 11.

The foregoing valuations include only the land, exclusive of improvements such as buildings, paving, or lighting.

The basis to be allocated to the Big Bear property is $41,437.94. The basis to be allocated to the Paisley property is $54,831.38.

Petitioner is not entitled to allocate any portion of the $50,000 escrow fund to the basis of the Big Bear or Paisley tracts.

The $50,000 held in escrow must be added to petitioner's capital gain in 1958, the year in which it was actually released to petitioner, and not included in 1957.

## OPINION.

In 1955 petitioner purchased a 10-acre tract of real estate, located between 16th and 17th Streets in Huntington, W. Va., with the intention of developing the property into a shopping center. After grading had been completed, negotiations were begun with Big Bear Stores Co. pursuant to which petitioner was to build and lease to Big Bear a store on approximately 30 percent of the property, which portion has frontage on 17th Street.

Petitioner had difficulty in obtaining financing for the building, and in 1957 sold this easterly portion of the tract to Big Bear for $100,000, $50,000 of which was placed in escrow pending petitioner's completion of paving and lighting on the remainder of the tract.

In 1958 the western 30 percent of the tract, which has frontage on 16th Street, was sold to Paisley and associates for $150,000.

The parties agree that the $50,000 placed in escrow in the Big Bear sale should be taken into income in 1958.

The purchase price to petitioner in 1955 of the whole tract, including the basic cost of the land, commissions, interest, taxes, and legal fees and insurance, was $110,941.12. In addition, petitioner spent a net of $29,584.64 for engineering, grading, and other miscellaneous items which are to be capitalized. The first issue involves the allocation of the above amounts in the computation of the bases of the two parcels sold to Big Bear and Paisley, respectively.

It is the position of respondent that the allocation must be made as of the 1955 purchase date and that since the petitioner then intended to use the land for a shopping center the only proper method of allocation is on the basis of square footage. Respondent reasons that reciprocal easements for access and the very nature of a shopping center support his assertion that no portion of the property has a value greater than that of any other.

We agree with respondent that the allocation of basis is to be made as of 1955. *Wellesley A. Ayling*, 32 T.C. 704. It is the proper method of allocation which remains in issue.

Section 1.61–6, Income Tax Regs., provides that "When a part of a larger property is sold, the cost or other basis of the entire property shall be equitably apportioned among the several . parts, * * *." Such "equitable" apportionment demands that relative values be reflected. Accordingly, if one parcel is of greater value than another, apportionment solely on the basis of square footage appears inappropriate. *Biscayne Bay Islands Co.*, 23 B.T.A. 731; *Cleveland-Sandusky Brewing Corp.*, 30 T.C. 539; and see 3–A Mertens, Law of Federal Income Taxation, sec. 21.12, p. 43. It is, of course, true that petitioner bears the burden of demonstrating the applicability of an allocation of basis other than that reflected in respondent's determinations.

We are satisfied from the evidence presented that despite the fact the property was to be used as a shopping center, thus having an integrated value, each lot or portion thereof reflecting upon each other portion, the land fronting on 16th Street, which was sold to the Paisley group, had a greater value than that reflected by a simple allocation of cost on the basis of square footage. Sixteenth Street is one of Huntington's main thoroughfares. Any business fronting thereon is inevitably in the public eye. Two expert witnesses testified that the Paisley property had a value equal to the remainder of the tract. Despite petitioner's intentions in 1955, we are satisfied that this property had a fair market value in excess of the approximately 30.9 percent of original cost assigned thereto by respondent. On the basis of all of the evidence, we have concluded that 40 percent of cost is allocable to the Paisley parcel. While we have not rested our conclusion thereon, it is significant that the sales price of the Paisley portion in 1958 was 50 percent greater than the price realized on the sale of the Big Bear parcel which fronts on the less-traveled 17th Street. Nothing in the evidence warrants a conclusion that the value of the 16th Street property increased so markedly from 1955 to 1958 that such a percentage difference is explained thereby. Yet, respondent valued the Big Bear and Paisley parcels almost equally.

The opinion of the experts did not differ greatly with respect to the relative value of the Big Bear parcel. Taking into account its frontage on 17th Street as well as its accessibility by reason of easements across the remainder of the tract, we have determined that the Big Bear parcel had a basis of 30 percent of the cost of the entire tract.

Respondent has argued that since the witnesses called by petitioner did not specifically testify with respect to allocation as of 1955, their

testimony should be wholly disregarded. Petitioner contends, however, that there was little or no change in the relative values of the parcels between 1955 and 1959. Such a posture of the facts is consistent with respondent's own position, for his valuation as of 1955 reflects relative values which very closely parallel the relative values disclosed by the county assessor's records as of 1959, upon which respondent places some emphasis. Thus, we are satisfied that the relative values of the properties remained fairly constant over the period in question and that the testimony of the expert witnesses called by petitioner is not to be disregarded.

What we have said thus far resolves the allocation issue only in connection with those costs incurred as part of the purchase price or clearly measurable thereby. Such costs total $110,941.12. There remains $29,584.64, consisting of grading and leveling expenses, engineering costs, and other related amounts incurred after purchase of the property. Petitioner has introduced no evidence to demonstrate that these costs may be apportioned or allocated to the Big Bear and Paisley tracts in any proportions other than those originally determined by respondent. Moreover, since these costs appear to have been incurred principally to fill and grade the excavation in the center parcel, allocation of some 41 percent thereof to that portion of the tract does not seem excessive. Accordingly, respondent's determinations with respect to allocation of these costs, to wit, 27.567 percent to the Big Bear parcel and 30.942 percent to the Paisley parcel, are sustained.

Respondent has allowed petitioner an addition to the Paisley basis of $1,320.85 for additional costs incurred with respect to that parcel in 1958. Petitioner has introduced no evidence from which any change in this amount can be determined. Respondent's determination with respect thereto is sustained.

The remaining question involves the $50,000 placed in escrow in 1957 upon sale of the Big Bear parcel. The parties now agree that the amount in question is $40,146.32, the actual cost to petitioner for paving and lighting the center tract. While it has been held that improvements made to specific parcels or contracted for with respect to specific parcels may be added to the basis thereof, *Milton A. Mackay*, 11 B.T.A. 569; *Cambria Development Co.*, 34 B.T.A. 1155, and that costs of improvements to a subdivision as a whole may be allocated among the parcels thereof, *Biscayne Bay Islands Co., supra*, improvements to property retained by the petitioner which may be sold at a later date may not be added to basis of another parcel in the tract. *Colony, Inc.*, 26 T.C. 30, affd., 244 F. 2d 75 (C.A. 6, 1957), reversed on other grounds 357 U.S. 28. Cf. *Biscayne Bay Islands Co., supra*.

Cf. also *Estate of M. A. Collins*, 31 T.C. 238. Accordingly, since it is uncontested that the $40,146.32 was spent entirely on improvements placed on the center or retained parcel of the tract, no portion of that amount may be allocated to the basis of the Big Bear tract alone or to the Big Bear and Paisley parcels.

The matter of a net operating loss carryover from 1957 to 1958 depends upon the disposition of the above issues.

*Decision will be entered under Rule 50.*