HUMBERTO OROZCO AND HELENA OROZCO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Orozco v. Commissioner
Docket No. 16207-92
United States Tax Court
T.C. Memo 1994-407; 1994 Tax Ct. Memo LEXIS 416; 68 T.C.M. (CCH) 472; August 22, 1994, Filed *416 Decision will be entered for respondent. Humberto Orozco and Helena Orozco, pro se. For respondent: Mark S. Mesler. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax and additions to tax for the calendar year 1987 in the amounts as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
$ 23,862.58
$ 1,193.13
[1]
$ 5,965.64
One of the issues raised by the pleadings has been disposed of by agreement of the parties, leaving for decision: (1) Whether petitioners are entitled to deduct in 1987 depreciation on a copyright of a computer program which they claim became worthless in that year and, if so, the amount deductible; (2) whether petitioners are entitled to deduct in 1987 all, or any part of, $ 15,170 as a loss from the sale of office furniture and equipment; (3) whether petitioners are entitled to deduct in 1987 amounts for flood damage sustained sometime in late 1987 or early 1988, an amount in excess of reimbursement for damage sustained to certain property in a move, and an amount for *417 property left in New Jersey when petitioners moved to Georgia, under section 165(c)(3); [1] (4) whether petitioners are liable for the additions to tax for negligence under section 6653(a)(1)(A) and (B); and (5) whether petitioners are liable for the addition to tax for a substantial understatement of income tax under section 6661. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Doraville, Georgia, at the time of the filing of their petition in this case, timely filed their joint Federal income tax return for the taxable year 1987 (the 1987 return). Petitioner Humberto Orozco (Mr. Orozco) is originally from Colombia. While living in the United States, and beginning about 10 years prior to 1987, Mr. Orozco prepared Federal income tax returns *418 for individuals for compensation. These returns never involved complicated matters. In 1987, Mr. Orozco worked in a hotel in Virginia and did not prepare any tax returns for compensation. However, in 1988 he prepared between 300 and 400 Federal income tax returns for individuals for compensation. Mr. Orozco developed a computer program, called the Immigration Program (the program), to classify immigrants according to certain categories under immigration law, and to produce documents an immigrant needed to apply for a visa or some other status before the Immigration and Naturalization Service (INS). To help develop the program, Mr. Orozco employed two computer programmers on a part-time basis. One of the computer programmers was petitioners' former son-in-law, who had no employment during the 2 years other than working on the program. The other programer was Rudolfo Navarro, who helped with the development of the program on only two or three occasions. In 1982, Mr. Orozco created the Hudson Computer Bureau, Inc. (Hudson). On April 19, 1983, the program was registered for copyright protection in Hudson's name as author of the program, showing the work as a "work made for hire". *419 The application for copyright showed the program first registered on December 27, 1982. Mr. Orozco also produced an instruction manual for the program which was registered for copyright. Mr. Orozco's former son-in-law was using the program in his work in a lawyer's office at the time of the trial of this case. Neither Hudson nor Mr. Orozco claimed any depreciation deduction on the program prior to 1987. During 1981 and 1982, Mr. Orozco purchased office furniture and equipment for $ 18,500. Mr. Orozco contributed some of the office furniture and equipment to Hudson. Hudson acquired office space and began to assist in the marketing of the program, and used the office furniture and equipment in its operations. After Hudson ceased operations, Mr. Orozco used the furniture and equipment. Hudson borrowed money from First Jersey National Bank (the First Jersey loan) and used the money to market the program. Sometime after 1985, Mr. Orozco paid off this loan with proceeds from the sale of his home. Mr. Orozco advertised the program and also traveled to different trade fairs and other places in New Jersey and New York to market the program. Most of the responses to the advertising *420 or marketing were sent to Hudson. Attempts to market the program were not successful, and in 1984 Hudson closed its office. Mr. Orozco moved the office furniture and equipment into the basement of his home. Around this time, Mr. Orozco filed with the secretary of state of New Jersey a statement stating that Hudson no longer existed. No formal liquidation of Hudson ever took place. After filing the statement that Hudson no longer existed, Mr. Orozco continued to market the program from the basement of his home using the furniture and equipment from Hudson's office. Around the end of 1987, Mr. Orozco ceased to market the program because his financial resources were being exhausted. The program was still applicable, but Mr. Orozco was unable to market it because of lack of financing. In 1987, when Mr. Orozco determined that he was no longer going to be able to sell the program because of lack of financial assets, he decided that the program had become worthless to him. Petitioners deducted $ 65,000 as depreciation of the program on their 1987 Federal income tax return. Petitioners on their 1983 Federal income tax return showed no wage income and only $ 8,135 of total income. *421 On their 1985 Federal income tax return, petitioners showed only $ 132 of wage income and no total income. [2] Petitioners on their 1986 Federal income tax return reported no wage income and no total income. The Internal Revenue Service has no record of any tax returns being filed by Hudson. The company where Mr. Orozco worked prior to 1983 was investigated for laundering money and eventually went out of business. In 1981 Mr. Orozco was indicted for money laundering, and in 1982 he was convicted. Mr. Orozco appealed his conviction, and in April 1984 his conviction was affirmed. Mr. Orozco was sentenced to an 18-month prison term and began serving the 18-month term in May 1984. He was released from prison in late 1985. In 1987, Mr. Orozco sold the office equipment *422 and furniture he had purchased in 1981 and 1982 for $ 3,330. During the years prior to 1987, neither Hudson nor Mr. Orozco took depreciation deductions for the office furniture and equipment. On the 1987 return, petitioners deducted a $ 15,170 loss from the sale of assets used in a trade or business. [3]
Between December 1987 and January 1988, petitioners were away from their house. During this time, petitioners' house was damaged by flooding. Petitioners did not discover the damage until sometime in January 1988 when they returned home. Mr. Orozco does not know whether the damage was done in 1987 or 1988. In a letter sent to the insurance company, and in a sworn statement sign by petitioners, the date of the flood casualty is listed as January 1988. Petitioners filed a claim with their insurance company claiming flood damage of $ 4,522.42. The insurance company sent petitioners *423 $ 3,732.85 as reimbursement for the flood damage. Petitioners did not know how much they would receive from the insurance company until some time in 1988. On their 1987 return, petitioners deducted $ 1,109.57 as a casualty loss for the damage caused when their house was flooded. [4]
In August 1987, petitioners moved from New Jersey to Virginia. Petitioners hired North American Van Lines (North American) to help with the move. During the move, employees of North American damaged the following items: (1) A porcelain piece; (2) a crystal figurine; (3) a sewing machine; and (4) a dining room chair. North American was able to repair the dining room chair and sent petitioners a settlement check for $ 300 as reimbursement for the other damage. The $ 300 represented compensation for damage done to the following items: Item
Amount
Porcelain piece
$ 100
Crystal figurine
150
Sewing machine
50
Total
300
*424 North American refused to pay the full amount petitioners claimed on the porcelain piece, because North American claimed it had been broken before. Thus, North American paid petitioners only an appearance allowance of $ 100. On their 1987 return, petitioners claimed a casualty loss deduction of $ 600 for the damage done by North American. [5] Petitioners also deducted $ 1,000 for books and acrylic signs lost during the move. When petitioners moved to Virginia, they left two typewriters which they claimed had a value of $ 500 and $ 200 respectively, an outside sign which they claimed had a value of $ 3,300, and a C.B. with antenna which they claimed had a value of $ 1,000. None of these items had been depreciated in prior years. On their 1987 return, petitioners deducted $ 4,500 as a casualty loss for the items they claimed to have abandoned. *425 The $ 4,500 deducted on the 1987 return represented the claimed fair market value of the items they claimed to have abandoned. Petitioners claimed a total casualty loss of $ 7,109.57 on their 1987 Federal income tax return. After applying the limitations on deduction of casualty and theft losses, petitioners deducted on their 1987 return $ 4,932.26 for casualty losses (the casualty loss deduction). On April 22, 1992, respondent issued a statutory notice of deficiency (the notice) to petitioners. In the notice, respondent made the following adjustments to petitioners' income: (1) Disallowed all the claimed depreciation deduction of $ 65,000 on the copyright of the program; (2) increased by $ 4,797.43 the income recognized from the sale of petitioners' principal residence; (3) disallowed the $ 15,170 loss petitioners claimed from the sale of the office furniture and equipment; and (4) disallowed the entire claimed casualty loss deduction. Petitioners concede that they should have reported $ 4,797.43 more of income from the sale of their principal residence. Respondent also determined additions to tax for negligence and substantial understatement of income tax. OPINION Section *426 167(a) allows as a depreciation deduction a reasonable allowance for the exhaustion, wear, and tear of property used in a trade or business, or of property held for the production of income. The term "property" includes intangibles. Citizens & Southern Corp. v. Commissioner, 91 T.C. 463, 479 (1988), affd. without published opinion 900 F.2d 266, reprinted in full 919 F.2d 1492 (11th Cir. 1990). Section 1.167(a)-6(a), Income Tax Regs., provides that the cost of a copyright is depreciated over its remaining useful life. Respondent argues that petitioners did not own the copyright, but instead it was owned by Hudson. Petitioners argue that Hudson never owned the copyright, but that Hudson was only used to market the copyright. The author or authors of a work copyrighted are deemed the owners of the copyright. 17 U.S.C. sec. 201(a) (1976). Generally, if the work is produced in a "work made for hire" situation, the employer or other person for whom the work was prepared is considered the author and, therefore, the owner of the copyright. 17 U.S.C. sec. 201 *427 (b) (1976). Transfer of ownership of a copyright may be by means of operation of law or by a conveyance. 17 U.S.C. sec. 201(d)(1) (1976). If the transfer is by means other than operation of law, there must be an instrument of conveyance, or a note or memorandum of the transfer, which is in writing and signed by the owner. 17 U.S.C. sec. 204(a) (1976). The copyright registration for the program names the author of the program as Hudson. The registration states that the program was a "work made for hire". If this is in fact true, according to 17 U.S.C. sec. 201 (1976), Hudson was the original owner of the copyright for the program. There is nothing in the record to suggest that Hudson ever executed a written conveyance or transfer of the copyright to petitioners. Therefore, if Hudson in fact owned the copyright, the only means by which petitioners could have obtained ownership of the copyright for the program would be a transfer by operation of law. Under the facts present in this case, we conclude that a complete liquidation of Hudson took place in 1984. The facts indicate *428 that Mr. Orozco intended to dissolve and liquidate Hudson during 1984. It was in 1984 that Mr. Orozco moved the office furniture and equipment into petitioners' basement and notified the secretary of state of New Jersey that Hudson no longer existed. Mr. Orozco apparently did not have a complete understanding of the corporate formalities that are normally followed, and there is no doubt that petitioners did not follow many, if any, of these corporate formalities. So it is not surprising that when Mr. Orozco decided to liquidate Hudson, he did it informally and without following the normal procedures for a liquidation. Since in 1984 Hudson was liquidated, and all of Hudson's assets were distributed to Mr. Orozco, Mr. Orozco became the owner of the copyright by operation of law if, in fact, Hudson owned the copyright. However, petitioners claim that Hudson never owned the copyright, and it was registered in Hudson's name as a convenience. Mr. Orozco testified at one point that the program was complete in 1980. If this was a fact, it could not have been produced by persons "for hire" for Hudson, since Hudson was not formed until 1982. However, at other points Mr. Orozco testified *429 that the program was being worked on as late as 1984. Under these circumstances, it could have been developed for Hudson by persons working "for hire". In either event, petitioners have not shown the basis, if any, they had in the program in 1987 when petitioners claim it became worthless and they should be able to deduct $ 65,000 as depreciation. Furthermore, as will be hereafter discussed, petitioners have not shown either that the program had worth at the end of 1986, or that it was worthless at the end of 1987. Respondent argues that even if petitioners are the owners of the copyright, petitioners failed to prove their basis in the copyright, or that the copyright became worthless in 1987. If petitioners received the copyright in the liquidation of Hudson, they received a fair market value basis at the time of the liquidation. The record is lacking as to the fair market value of the copyright at the time Hudson liquidated. In 1984 Mr. Orozco realized that the marketing of the program was not going well, so he dissolved Hudson and moved its assets to his house. This may also have been due to Mr. Orozco's incarceration. It is possible that the program was essentially worthless *430 when petitioners dissolved Hudson. Petitioners' realization that the program was worthless could have been the reason that petitioners decided to dissolve Hudson. Petitioners have presented no evidence that is helpful in ascertaining petitioners' basis in the copyright. The evidence presented is nothing more than Mr. Orozco's speculations of what was spent developing the program. At no time did either Hudson or petitioners claim depreciation deductions on the copyright. Section 1016 sets out the adjustments to a taxpayer's basis in an asset. One of the adjustments is a reduction for allowable depreciation. Sec. 1016(a)(2). Even if a taxpayer fails to take a depreciation deduction on an asset, his basis in the asset is reduced by the amount of allowable depreciation. Virginian Hotel Corp. v. Helvering, 319 U.S. 523, 525 (1943); American Natl. Realty Co. v. Commissioner, 136 F.2d 486 (5th Cir. 1943), affg. 47 B.T.A. 653 (1942); Cleveland-Sandusky Brewing Corp. v. Commissioner, 30 T.C. 539, 542 (1958); sec. 1.1016-3(a)(1)(i), Income Tax Regs. Where no depreciation *431 deduction has been taken on an asset in the taxable year or for any prior taxable year, the basis of the asset is adjusted for depreciation using the straight-line method of depreciation. Sec. 1.1016-3(a)(2)(i), Income Tax Regs.
We hold that petitioners have not proven their basis, if any, in the copyright in 1987, or that the copyright became worthless in 1987. Therefore, we uphold respondent's disallowance of petitioners' claimed deduction in 1987 for depreciation of the copyright. Section 165 [6] allows a deduction for losses sustained during the taxable year which are not compensated for by insurance or otherwise. Not every loss that a taxpayer incurs qualifies as a deduction under section 165. See Maher v. Commissioner, 76 T.C. 593, 596-597 (1981) (citing Billman v. Commissioner, 73 T.C. 139, 141 (1979)), affd. 680 F.2d 91 (11th Cir. 1982). In the case of a taxpayer who is an individual, the loss must fall within one of the categories mentioned in section 165(c) to be deductible. The categories mentioned in section 165(c) are as follows: (1) Losses incurred in a trade or business; *432 (2) losses incurred in a transaction entered into for profit; and (3) losses of property, not connected with a trade or business or transactions entered into for profit, resulting from "fire, storm, shipwreck, or other casualty, or from theft." *433 Petitioners claimed a loss of $ 15,170 in 1987 from the sale of office furniture and equipment. The facts establish that some, but not all, of the office furniture and equipment sold by petitioners in 1987 had previously been contributed to Hudson. Exactly which items of office furniture and equipment had been contributed to Hudson is not shown. Petitioners would have originally had a cost basis in the office furniture and equipment which was not contributed to Hudson. Petitioners' basis in the office furniture and equipment which was contributed to Hudson should be its fair market value at the time of the liquidation of Hudson. Sec. 334. The record is lacking as to what the fair market value of this furniture and equipment was at the end of 1984. All the record establishes is that the office furniture and equipment was purchased during 1981 and 1982 for $ 18,500, and sold in 1987 for $ 3,330. Petitioners did not claim depreciation deductions on any of the office furniture and equipment for any of the years here in issue, nor did Hudson claim any depreciation deductions on the office furniture and equipment. Petitioners' original basis in the office furniture and equipment *434 should be reduced for depreciation deductions that should have been taken, but were not. Sec. 1016(a)(2); Virginian Hotel Corp. v. Helvering, 319 U.S. at 525; American Natl. Realty Co. v. Commissioner, 136 F.2d 486 (5th Cir. 1943), affg. 47 B.T.A. 653 (1942); Cleveland-Sandusky Brewing Corp. v. Commissioner, 30 T.C. at 542; sec. 1.1016-3(a)(1)(i), Income Tax Regs.
Since petitioners have failed to establish the amount, if any, of their basis in the office furniture and equipment at the time of the sale, we uphold respondent's disallowance of the $ 15,170 loss petitioners claimed from the sale of office furniture and equipment. Because of our conclusion that petitioners have failed to show any remaining basis in the office furniture and equipment in 1987 if proper depreciation had been taken in prior years, it is unnecessary to decide what portion of such furniture and equipment might have been business property and what portion personal. Section 165(c)(3) allows as a deduction to an individual certain losses commonly referred to as casualty losses. A casualty *435 loss is allowable to an individual for a loss of property not connected with a trade or business or a transaction entered into for profit, if the loss results from "fire, storm, shipwreck, or other casualty". Sec. 165(c)(3). Whether a particular event constitutes a casualty within the meaning of section 165(c)(3) is to a large extent a question of fact. Bercaw v. Commissioner, a Memorandum Opinion of this Court dated Jan. 21, 1947, affd. 165 F.2d 521 (4th Cir. 1948). Whether a loss resulted from a fire, storm, or shipwreck is less difficult to determine than whether a loss resulted from an "other casualty". The term "other casualty" is not defined in either the Internal Revenue Code or the regulations. We have noted that "other casualty" means a comparable type of event to "fire, storm, [or] shipwreck". Billman v. Commissioner, 73 T.C. 139, 141 (1979). An "other casualty" has been held to occur wherever unexpected, accidental force is exerted on property and the taxpayer is powerless to prevent application of the force because of the suddenness thereof or some disability, [so that] the resulting direct and *436 proximate damage causes a loss which is like or similar to losses arising from the causes specifically enumerated in section 165(c)(3). * * * [White v. Commissioner, 48 T.C. 430, 435 (1967).]
See also Broido v. Commissioner, 36 T.C. 786 (1961). An "other casualty" must not be due to the deliberate actions of the taxpayer. White v. Commissioner, supra at 435. We have stated that section 165(c)(3) allows for the deductions of losses which are "sudden, cataclysmic, and devastating". Popa v. Commissioner, 73 T.C. 130, 132 (1979). Casualty losses are deductible in the year the loss is sustained. Hunter v. Commissioner, 46 T.C. 477, 492 (1966); secs. 1.165-1(d)(1), 1.165-7(a)(1), Income Tax Regs. A casualty loss is deemed sustained in the taxable year in which the loss transpires as shown by "closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Sec. 1.165-1(d), Income Tax Regs. No portion of a loss may be deducted "until it can be ascertained with reasonable certainty *437 whether or not * * * reimbursement will be received." Sec. 1.165-1(d)(2)(i), Income Tax Regs.; see also Dawn v. Commissioner, 675 F.2d 1077, 1078 (9th Cir. 1982), affg. T.C. Memo. 1979-479; Gale v. Commissioner, 41 T.C. 269 (1963). The year in which a loss occurred is a question of fact and the burden of proof is on petitioners. Boehm v. Commissioner, 326 U.S. 287, 294 (1945); Korn v. Commissioner, 524 F.2d 888, 890 (9th Cir. 1975), affg. T.C. Memo. 1973-258; Halliburton Co. v. Commissioner, 93 T.C. 758, 770 (1989), affd. 946 F.2d 395 (5th Cir. 1991). The testimony regarding the claimed casualty loss resulting from the flooding of petitioners' house leaves unclear when the flooding actually occurred. The record establishes only that petitioners left their home during December 1987 and did not return until sometime in January 1988. During the interim, the house was damaged by flooding. It is clear that it was not until sometime in 1988 that petitioners *438 knew of the damage, or knew whether they would be reimbursed by an insurance company. Furthermore, Mr. Orozco testified that upon returning home in January 1988, he discovered that "the house was flooded". This indicates that the flooding existed in 1988. Thus, even if the event that caused the damage began in 1987, it continued and did not end until sometime in 1988. Since the transaction or event causing the casualty loss did not end, or was not completed until sometime in 1988, and since it was not until sometime in 1988 that petitioners knew whether they would be reimbursed for the damage, we hold that petitioners are not entitled to deduct $ 1,109.57 in 1987 as a casualty loss from damage caused by the flooding of their house. We hold that any loss petitioners may have sustained from items damaged by moving in 1987 are not casualty losses. As we have stated before, losses of personal property arising from storage or transit, and otherwise unexplained, are not deductible as casualty losses. Bercaw v. Commissioner, supra; see also United States v. Lattimore, 353 F.2d 379, 381 (9th Cir. 1965). We hold that the losses claimed by petitioners *439 for items that were lost or damaged during a move they made in 1987 are not deductible as a casualty loss. Furthermore, petitioners have failed to show that they were not fully compensated for any loss in moving. It is clear that the $ 4,500 deduction petitioners claimed as a loss for items abandoned does not qualify as a casualty loss. According to Mr. Orozco's testimony, the items abandoned were used in a trade or business. This loss, if any, was due to the actions of petitioners in deciding to abandon the property. This type of loss is clearly not the type of loss meant to be deducted as a casualty loss. Instead, if the requirements are met, this type of loss would more properly be deductible as an abandonment loss under section 165. Section 165(c)(1) allows for the deduction of a loss incurred in a trade or business. A loss may arise from a permanent withdrawal of property used in a trade or business or for the production of income. Sec. 1.165-2(c), Income Tax Regs.Section 1.165-2(c), Income Tax Regs., refers us to section 1.167(a)-8, Income Tax Regs., which provides that withdrawal of depreciable property used in a trade or business may be accomplished by several methods. *440 Withdrawal may be accomplished by sale, exchange, retirement, or "actual physical abandonment". Sec. 1.167(a)-8(a), Income Tax Regs. Where assets are withdrawn by actual physical abandonment, the loss will be recognized, measured by the amount of the adjusted basis of the asset abandoned at the time of abandonment. Sec. 1.167(a)-8(a)(4), Income Tax Regs.
It takes more than the mere intention to abandon, or the nonuse of property, to establish an abandonment of property. Beus v. Commissioner, 261 F.2d 176, 180 (9th Cir. 1958), affg. 28 T.C. 1133 (1957); Citron v. Commissioner, 97 T.C. 200, 209 (1991). In order to be entitled to an abandonment loss, a taxpayer must show: (1) An intention on the part of the owner to abandon the asset, and (2) an affirmative act of abandonment. Citron v. Commissioner, supra at 208-209. In determining a taxpayer's intent to abandon, the subjective judgment of the taxpayer is entitled to great weight, and the court is not justified in substituting its business judgment for that of the taxpayer. Id. at 209 *441 (citing A. J. Industries, Inc. v. United States, 503 F.2d 660, 670 (9th Cir. 1974)). Whether an affirmative act to abandon has taken place is determined from all the facts and surrounding circumstances. United California Bank v. Commissioner, 41 T.C. 437, 451 (1964), affd. per curiam 340 F.2d 320 (9th Cir. 1965). In the present case, the facts indicate that some of the property claimed to have been abandoned had been used in promotion of the program. Some of the property which was claimed to have been abandoned was at one time owned by Hudson. We have concluded that at the time of the liquidation of Hudson, petitioners received title to Hudson's assets. However, this record is not clear as to when petitioners abandoned the items. From the record, it appears that petitioners may have abandoned the items in 1984 when they dissolved Hudson and moved the business assets into the basement at their home. If this is the situation, petitioners should have taken a deduction if any was allowable in 1984, not in 1987. Two of the items claimed to have been abandoned were typewriters. It would seem *442 unlikely that petitioners were unable to remove the typewriters and, therefore, had to abandon them. Based on the record in this case, we hold that petitioners have not proven they are entitled in 1987 to a deduction for an abandonment loss on assets. There is some indication in this record that petitioners in 1987 when they had income, claimed losses which, if proper to be claimed at all, should have been claimed in prior years in which petitioners did not have taxable income. A taxpayer must claim a loss in the proper year and is not entitled to claim a loss sustained in a prior year in a later year because he had no income in the prior year. Section 6653(a) imposes an addition to tax for negligence or intentional disregard of rules or regulations. Negligence encompasses any failure to reasonably attempt to comply with the Internal Revenue Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do in a similar situation. McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), *443 affg. in part and remanding in part 43 T.C. 168 (1964). Petitioners bear the burden of proving that they were not negligent. Rule 142(a); Patterson v. Commissioner, 740 F.2d 927, 930 (11th Cir. 1984), affg. T.C. Memo. 1983-655; Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). The record in this case is deficient in numerous respects. Petitioners have failed to establish a basis for the deductions claimed. Several of the deductions were disallowed for lack of substantiation, and the law is clear that a taxpayer is required to substantiate claimed deductions. Mr. Orozco testified that he has been employed as a tax return preparer. Mr. Orozco should have had a better understanding of the Internal Revenue Code than the average taxpayer. Therefore, we hold that petitioners have failed to meet their burden of proof with regard to the additions to tax under section 6653(a). Section 6661(a) imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement is defined as the *444 tax required to be shown on the return, less the tax actually shown on the return, reduced by any rebates. Sec. 6661(b)(2)(A). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Section 6661(b)(2)(B) provides that in determining the amount of the understatement, the total understatement is reduced by the items for which the taxpayer had substantial authority for the position taken on the return, or adequately disclosed the relevant facts on the return. The burden is on petitioners to show error in respondent's determination of the addition to tax under section 6661. Rule 142(a); King's Court Mobile Home Park v. Commissioner, 98 T.C. 511, 517 (1992). For substantial authority to exist for a taxpayer's position, the weight of authorities in support of the taxpayer's position must be substantial when compared to the weight of authorities supporting contrary positions. Substantial authority refers to legal precedent which supports the position taken by the taxpayer. Antonides v. Commissioner, 91 T.C. 686, 702 (1988), *445 affd. 893 F.2d 656 (4th Cir. 1990). Petitioners have not shown and we have not found anything that could be interpreted to be substantial authority for the deductions petitioners took on their 1987 return that form the basis of their underpayment. See sec. 1.6661-3(b)(2), Income Tax Regs. Also, this record shows that petitioners have not adequately disclosed the tax treatment of the various items on their return. Accordingly, we sustain the addition to tax under section 6661(a) as determined by respondent. Decision will be entered for respondent.
Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Petitioners reported losses from a business Mrs. Orozco operated, and from rental property, which losses were more than the wage income and interest income petitioner reported for 1985. Therefore, petitioners' total income was a negative amount.↩
3. Petitioners' computation of deduction: ↩
Total amount received
$ 3,330
Total basis of assets sold
18,500
Loss
15,170
4. Petitioners' calculation of the casualty loss from the flood: ↩
Fair market value before casualty
$ 4,522.42
Insurance or other reimbursement
3,732.85
Casualty loss
[sic] 1,109.57
5. Petitioners' computation of casualty loss deduction: ↩
Fair market value before casualty
$ 950
Insurance or other reimbursement
350
Casualty loss deduction
600
6. SEC. 165. LOSSES. (a) General Rule. -- There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. -- In the case of an individual, the deduction under subsection (a) shall be limited to -- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) except as provided in subsection (h), losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.
* * * (h) Treatment of Casualty Gains and Losses. -- (1) $ 100 limitation per casualty. -- Any loss of an individual described in subsection (c)(3) shall be allowed only to the extent that the amount of the loss to such individual arising from each casualty, or from each theft, exceeds $ 100. (2) Net casualty loss allowed only to the extent it exceeds 10 percent of adjusted gross income. -- (A) In general. -- If the personal casualty losses for any taxable year exceed the personal casualty gains for such taxable year, such losses shall be allowed for the taxable year only to the extent of the sum of -- (i) the amount of the personal casualty gains for the taxable year, plus (ii) so much of such excess as exceeds 10 percent of the adjusted gross income of the individual.
(B) Special rule where personal casualty gains exceed personal casualty losses. -- If the personal casualty gains for any taxable year exceed the personal casualty losses for such taxable year -- (i) all such gains shall be treated as gains from sales or exchanges of capital assets, and (ii) all such losses shall be treated as losses from sales or exchanges of capital assets.↩