An entry in conformity with the foregoing may be presented.

**BEAVER DAM COAL COMPANY,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 4615.**

United States District Court
W. D. Kentucky,
at Louisville.

Jan. 11, 1965.

Robert S. Dorsey Bullitt, Dawson & Tarrant, Louisville, Ky., for plaintiff.

William E. Scent, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

Beaver Dam Coal Company instituted this suit against the United States seeking to recover income taxes alleged to have been erroneously and illegally assessed and collected by the Commissioner of Internal Revenue for the taxable years 1957 through 1961. Claims for refund were timely filed and denied, and this action was filed within the prescribed statutory period under the jurisdiction provided by Section 1346(a) (1) of Title 28, United States Code.

The recovery sought concerns the aggregate amount of $59,510.44 paid by plaintiff on March 22, 1963, and concerns only the deductions claimed by plaintiff for cost depletion of coal produced by the strip mining process.

The issues raised by the pleadings in this case are: (a) whether the method employed by plaintiff in computing its allowances for depletion was correct, or (b) whether the method used by the Commissioner, which resulted in the additional taxes, is correct.

The parties agree that plaintiff is entitled to "a reasonable allowance for depletion." As stated by plaintiff in its brief, the basic difference between the method used by the plaintiff in comput-

ing cost depletion during the five years in question and that of the Commissioner resulting in the contested deficiencies is the cost placed upon the surface land stripped to recover the coal underneath. The method employed by the Commissioner to ascertain allowable depletion is to add to the total cost of the minerals the proportionate cost of the surface area disturbed by the mining operation in the production of the mineral. The Commissioner accepts plaintiff's figures as to the cost of the minerals, leaving in dispute the cost of the surface areas disturbed by the mining operation.

## FINDINGS OF FACT

The Court makes the following findings of fact from the testimony heard at the trial, stipulations between the parties, depositions, and exhibits upon which this case was submitted:

(1) Beaver Dam Coal Company is the owner of extensive surface and mineral rights in Ohio County, Kentucky. It is not engaged in the mining of coal but acquires land primarily for the purpose of entering into lease agreements with operating companies which produce coal by the strip mining process.

(2) In most of the land involved here, plaintiff acquired the right to the coal underlying the surface separately and prior to its acquisition of surface rights. The surface lands were acquired in separate tracts ranging in size from a fraction of an acre to several hundred acres and, in many instances, a tract represents the acquisition of an entire farm. A strip mining operation may result in the destruction of a small portion or all of the surface of a tract of land.

(3) The amounts of tax and interest resulting from the additional assessment and payment of taxes for the years in question, which plaintiff seeks to recover are:

| Year | Tax | Interest |
|---|---|---|
| 1957 | $11,376.43 | $3,426.02 |
| 1958 | 10,774.29 | 2,598.23 |
| 1959 | 12,154.78 | 2,201.85 |
| 1960 | 8,021.35 | 971.79 |
| 1961 | 7,525.51 | 460.19 |

(4) During the years in question, plaintiff has received income from surface lands it owned from the sale of timber and rental and farm income in the following amounts:

| Year | Timber Sales | Rental Income | Farm Income |
|---|---|---|---|
| 1957 | $1,297.74 | $  — | $  — |
| 1958 | 1,706.33 | 836.97 | 1,161.83 |
| 1959 | 6,171.45 | 1,095.41 | 1,654.27 |
| 1960 | 1,508.00 | 2,166.24 | 1,080.48 |
| 1961 | 1,029.00 | 84.25 | 1,170.22 |

(5) In its original returns for each of the five years in question, plaintiff determined its allowable deduction for depletion by the cost method and included the cost of the coal rights plus the entire cost of the entire surface rights less the estimated salvage value for both stripped and unstripped surface rights.

(6) The depletion schedule used by the plaintiff set forth for each tract of land: the total surface cost; the total number of surface acres; the estimated number of surface acres that would be stripped; the estimated number of acres that would not be stripped, and the estimated salvage value of both stripped and non-stripped acres at the end of stripping operations.

Each purchase of surface rights was identified in plaintiff's depletion schedule as a separate tract. The percent of total surface acres of a tract overlying strippable coal varied from five percent to one hundred percent; the average for all tracts was approximately forty percent.

In its cost depletion basis with respect to each tract, plaintiff included its entire surface cost, both stripped and non-stripped acres, less an estimated salvage value per acre of approximately $2.00 for stripped acres and $4.00 for non-stripped acres.

(7) In computing plaintiff's depletion deduction, the Commissioner agreed with plaintiff as to the cost of coal rights to which was added the proportionate cost of that portion of the surface land actually destroyed in extracting the coal. The proportionate cost of the surface rights representing the cost of land not stripped and not to be stripped in the mining operation was excluded by the Commissioner from the cost basis for depletion. No salvage value was assigned to that portion of the surface rights destroyed in extracting the coal.

(8) It was stipulated by the parties that 6,200 tons was the average production of coal per acre stripped, and this formula was applied in determining the percent of total surface destroyed and to be destroyed.

(9) There was no proof as to the average price per acre paid by plaintiff for all of the surface rights included in its depletion schedule.

(10) The highest and best uses of plaintiff's surface lands prior to stripping operations were crop production, pasturing, and timber. The greater part of the land stripped was hill land; the remaining portion not stripped was more level and more suitable to farming purposes.

The highest and best use of areas after stripping operations had been completed were for production of timber and recreational purposes. The stripped lands were rehabilitated in order to be productive for timber and pasturing in future years.

(11) Plaintiff has not sold, abandoned, or otherwise disposed of any of its lands included in its depletion schedule. There was no allocation of purchase price as to land overlying coal to be stripped and other land.

(12) When stripping operations on a tract of land have been completed, the unstripped lands may have some depreciation as farming units because of irregularly shaped fields problems of access, but the stripping operations do not render worthless either the land actually stripped or plaintiff's adjacent unstripped lands.

(13) Plaintiff is entitled to include in its cost depletion basis for each of the years 1957 through 1961 only the cost of the surface areas destroyed and to be destroyed in the stripping operations, and this cost is to be determined by use of the formula employing 6,200 tons as the average production of coal per acre stripped.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this action under the provisions of Section 1346 (a) (1) of Title 28, United States Code.

Section 611(a) of the 1954 Internal Revenue Code authorizes the allowance as a deduction in computing taxable income a reasonable allowance for depletion in mining property and provides that such depletion shall be reasonable according to the peculiar conditions in each case and shall be made pursuant to the regulations prescribed by the Secretary or his delegate.

Regulation 1.612.1(a) provides that the basis upon which the deduction for cost depletion under Section 611 to be allowed in respect of mineral property does not include the residual value of land and improvements at the end of operations. The regulation specifically provides: "In the case of any mineral the basis for cost depletion does not include amounts representing the cost or value of land for purposes other than mineral production.

In many instances, plaintiff was compelled to buy an entire farm in order to acquire the surface rights to land overlying coal. The coal producing land often constituted a small percent of the total acreage of the tract purchased. Therefore, plaintiff actually paid a premium price for many acres of non-coal produc-

ing farm land in order to obtain surface rights so that coal under other portions of the tract could be extracted.

Plaintiff's contention, in effect, is that under the law applicable in this case it is entitled to claim diminution in the value of its land adjacent to land which has been strip mined. Such was the contention in Denise Coal Company v. Commissioner of Internal Revenue, 3 Cir., 271 F.2d 930 (1959), where it was claimed that the mining operation had produced piles of deposit on land adjacent to the stripped land, that in many instances the soil had become permeated with acid from slag thrown up in the mining process, and that the rehabilitation process had become so expensive as to make the land worthless. The court denied the claim because there had been no taxable event to make the claimed loss ascertainable or allowable. At page 937 of its opinion, the court said:

> " * * *, a taxpayer does not get a loss deduction because his piece of property decreases in value from year to year but he gets no owns the lot has the misfortune to have it in a part of town where there is no growth, but decay instead, he is undoubtedly poorer from year to year. If this man who loss until he disposes of the property by sale, abandonment, tax sale by public authorities or some other way."

Until plaintiff sells its property not overlying coal and not stripped, it is unable to establish any loss which becomes a part of a depletion allowance.

Plaintiff is entitled to include in its cost depletion only the cost of the surface lands actually destroyed in extracting the coal by the strip mining process. Helvering v. Bankline Oil Co., 303 U.S. 362, 58 S.Ct. 616, 82 L.Ed. 897 (1937); Manchester Coal Co., 24 B.T.A. 577 (1931); Denise Coal Company v. Commissioner of Internal Revenue, supra.

The formula used by the Commissioner in determining the portion of plaintiff's lands to be included in a basis for cost

depletion allowable to it was proper and plaintiff has received "a reasonable allowance for depletion" as contemplated by Section 611(a) of the 1954 Internal Revenue Code.

It is concluded that the additional taxes assessed by the Commissioner and collected from plaintiff were properly assessed and collected and plaintiff is not entitled to recover anything in this action.

A judgment dismissing plaintiff's complaint and awarding to the defendant its costs in this action will be entered.