H. L. Scales, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 11408. Promulgated February 27, 1928.

*J. M. McMillin, Esq.*, for the petitioner.
*Shelby S. Faulkner, Esq.*, for the respondent.

OPINION.

MILLIKEN: Relative to the additional deduction of $1,275.40 paid for labor performed on the farms of the petitioner, we think the

weight of the evidence supports the claim. He kept no regular books of account in the commercial sense, but had a check or check books, and kept a small pocket time or memorandum book, in which from time to time he made entries of expenditures for labor and other items. This latter book had been lost or destroyed at the time of the hearing, but petitioner testified that he kept the book and that it showed the expenditures claimed, that the entries were correct and that in preparing his return for 1920 he used it. Petitioner made an unsuccessful search for the records which he used in making his income-tax returns and we are of the opinion that his uncontradicted testimony warrants the allowance of the additional deduction claimed.

The decision on the remaining assignment of error depends on the character and effect of the written instrument executed by the petitioner, the material parts of which are set forth in the findings of fact.

Under article 7972, Vernon's Texas Statutes, levee improvement districts may be created for the purpose of reclaiming lands from overflow, to control the distribution of waters, to straighten streams, and to conserve and develop the natural resources of the State. Article 7979, Vernon's Texas Statutes, classifies such a levee improvement district as a governmental agency and a body politic and corporate. Under article 7981, Vernon's Texas Statutes, levee improvement districts are authorized to acquire lands or waters in fee simple or to acquire an easement or right of way to, over, or through the same.

The levee improvement district in the instant case was organized by the petitioner and other adjoining landowners for the purpose of reclaiming their lands from overflow.

From an examination of the written instrument herein, it will be seen that the bare legal title to the land was not conveyed by the petitioner, but the petitioner granted valuable and exclusive rights to the grantee. In the first paragraph after the description, it is provided that the District shall have a perpetual easement and right of way with free and uninterrupted ingress and egress to its employees, servants, tenants, carts, wagons, carriages, machinery and other vehicles, horses, mules, and engines as shall be necessary. It is further provided that the district shall have the right to use such wood, timber, soil, or stone on the right of way as may be necessary in the construction of the levee, and that it should have the right to ditch and drain the right of way. Complete control and supervision of said right of way at any and all times is given the District by the writing.

The only rights retained by the owner are the right to pasture stock on said right of way and the right to remove from it such

timber and wood not used by the district. The right of pasturage above-mentioned was subject to the approval of the district supervisors.

Under the provisions of this instrument it is plain that about the only thing or interest remaining in the petitioner ·is the bare legal title and that this is of no practical or market value. According to the evidence and findings of fact, the petitioner has been deprived of all beneficial interest in the land, and it is useless for farming or grazing purposes. Under such circumstances, many courts hold that the granting of such an easement is tantamount to a sale of the fee. We have been cited to no case in Texas passing upon this question, but we find the general rule stated by the following authorities and text writers.

It is stated in 19 Corpus Juris, 909, as follows:

It is true that in some cases the grant of an estate designated and described only by the particular use or purpose for which the land is appropriated will be held to pass a fee.

Thompson on Real Property, sec. 285, in part, is as follows:

An easement is a species of incorporeal hereditament, and as such it lies in grant, not in seisin. Although imposed upon corporeal property, an easement carries no corporeal interest in or right to the land. But where the whole exclusive use of a thing is obtained, the right becomes an interest, and there is no longer an easement.

Cooley on Taxation, sec. 636, says:

When an easement in land taken for a public use involves practically the exclusive possession and control of the property by the public and leaves the original owner with no right of substantial value, the property is exempt from taxation although he remains the owner of the fee.

Again in sec. 1097, the same author says:

Where a grantor retains no beneficial interest in the land conveyed, his only authority being to enter upon it for a special purpose, an assessment to him is erroneous.

The case of *People* v. *O'Donnell*, 139 App. Div. 133; 124 N. Y. S. 36, was a taxation case from the City of New York. It appeared that in 1831 one Ruggles was the owner of a considerable tract of land in the neighborhood of and surrounding what is now known as Gramercy Park, and that in order to make the lots salable he conveyed a certain portion thereof to trustees to the end that they and their successors should enclose and lay out and preserve, maintain and keep it as an ornamental park or square for the benefit of the owners of the surrounding lots and as a place of common resort and recreation. Subsequently, Ruggles conveyed lots of land surrounding Gramercy Park and the purchasers thereof held their property subject to the terms and conditions of the deed creating the

trust to the park property. The defendants were the commissioners of taxes and assessments of the City of New York, and for the years 1903, 1904 and 1905 the property known as Gramercy Park was assessed in the sum of $500,000, and for the last year in the sum of $750,000. The proceeding was for the purpose of setting aside this assessment upon the ground that the trustees were the owners merely of the bare legal title and that they had no beneficial interest therein, and that, therefore, the property was not assessable against them for taxation purposes. The court so held, and in its opinion said:

We then come to the consideration of the objection urged by the relators against these assessments, which is that, when an easement is carved out of one property for the benefit of another, the market value of the servient estate is thereby lessened, and that of the dominant increased practically by just the value of the easement. The respective tenements should thereafter be assessed accordingly; the determinate question of the assessable value of each of the properties affected being its market value, or the amount for which it would sell under ordinary circumstances. By section 889 of the Greater New York Charter (Laws 1901, c. 466), it is made the duty of the deputy tax commissioners in arriving at their conclusions as to the assessable value of taxable property, to state, under oath, to the board, the sum for which, in their judgment, each separately assessed parcel of real estate, under ordinary circumstances, would sell if they were wholly unimproved. Under this provision, it is the duty of commissioners of taxes and assessments to assess the property year by year at its actual market value, no more, no less. *People ex rel. M. R. Co.* v. *Barker*, 146 N. Y., 312, 40 NE. 996. In this case it is apparent from the statement heretofore made, that the relators' property cannot be sold, under ordinary circumstances, for any sum whatever. No person buying this property would acquire any beneficial interest therein. Assuming that he could get legal title to it from the trustees, subject to the easements, his title would simply be a naked one with none of the usual advantages attendant upon the ownership of real estate; he would simply hold a title to a piece of property from which he could derive no benefit and in which he could have no rights of enjoyment, but which would be devoted entirely to the enjoyment and use of the surrounding property owners.

A similar case is that of *Lancy* v. *Boston*, 186 Mass. 128; 71 N. E. 302. There certain property had been taken by condemnation for the purpose of abolishing a railroad grade crossing, the fee still remaining in the former owners. The land was assessed for taxation against the title holders, the tax was not paid, and, after a sale for taxes, the title was conveyed to Lancy. In a contest between him and the City of Boston, the court held that Lancy acquired no title under the tax sale because the holders of the naked legal title had no beneficial interest in the land and it was not assessable against them for taxation. The court said in part:

The petitioner's title is under a sale for taxes assessed to the former owners on May 1, 1897, and we must consider the effect of such a tax upon the rights of the public and of the railroad company, previously acquired. Each of the titles created by the taking was only an easement, and the fee remained in

the former owners. But the easement in each case gave paramount and practically exclusive rights in the land taken. An appropriation of land to the use of the public for a highway under the right of eminent domain creates an interest in the public which cannot be affected by a subsequent attempt to tax the land to the owner of the fee. The various provisions as to taxation of real estate and the collection of taxes are inapplicable to property held for such a public use. It has often been decided that lands appropriated to such uses are exempt from taxation. * * *. We are not aware that there has ever been an attempt to tax the fee held by an owner of land which was taken and used for a highway or railroad, or that the court has, in terms, decided that the interest of the owner of the fee in such a case is exempt from taxation. But the implication from the cases is to that effect, and we are of opinion that where an easement in land taken for a public use involves practically the exclusive possession and control of the property by the public, and leaves the original owner with no right of substantial value, the property is exempt from taxation, although he remains the owner of the fee. * * *

In the case of *Ballard* v. *L. & N. R. Co.*, 86 Ky. 196; 5 S. W. 484, the principle is laid down that the object of construction is to arrive at the intention of the parties, that technical rules should not be applied, and that in case of a deed the entire instrument must be considered. In that case the writing under consideration was headed "Deed of Right of Way," but the granting clause was to the effect that the grantor "hath given, granted, bargained and sold to the Cumberland & Ohio Railroad Co. so much of his lands in said county as is required for the use of the road." This was held to pass the absolute title.

Relative to the nature of a right of way for a railroad, the Supreme Court of Iowa, in *Smith* v. *Hall*, 103 Iowa, 95; 72 N. W. 427, said:

The easement is not that spoken of in the old law books, but is peculiar to the use of a railroad, which is usually a permanent improvement, a perpetual highway of travel and commerce, and will rarely be abandoned by nonuser. The exclusive use of the surface is acquired, and damages are assessed, on the theory that the easement will be perpetual; so that, ordinarily, the fee is of little or no value, unless the land is underlaid by quarry or mine.

In *Dempsey* v. *Burns*, 281 Ill. 644; 118 N. E. 193, the question arose as to the nature of a written instrument conveying certain rights to a drainage district. The action was one to quiet title, and on a question of adverse possession it was contended by the appellant that the conveyance to the drainage district was, in effect, a lease, and that the possession of the district holding under him was the possession of appellant. The instrument conveyed "The perpetual easement and right of way for the construction, maintenance, building and repairing of ditch No. 1," and contained the following provision:

This conveyance being made to said grantees as a right of way for said ditch, which is not to exceed 100 feet in width across said premises, but only so much of said width is to be used in the construction of said ditch and placing the waste banks as shall be absolutely necessary for said ditch purposes.

The said grantor hereby expressly reserves to himself, his heirs and assigns, the exclusive right at all times hereafter to enter upon, use, and occupy and enjoy the said strip of ground for hunting and fishing purposes, and for all other uses and purposes, of every kind and character, which will not and do not interfere with or impair the use and occupation thereof by the grantees as a ditch and levee for drainage purposes.

The court said:

This instrument is not a lease, as appellant contends. It is the conveyance of an easement or right of way across the premises, based upon whatever right or title appellant had, and the district went into possession under this deed. It did not hold this strip for appellant, and its possession was not the possession of appellant.

In *Mount Pleasant Cemetery Co.* v. *Mayer*, 50 N. J. L. 66; 11 Atl. 147, where a cemetery company had been assessed for street improvements, it appeared that the company had conveyed a part of the property assessed to lot holders, retaining certain rights only. As to these lots the assessment was held illegal, the court saying:

In this respect, I think the commissioners in making this assessment applied an incorrect legal principle. The only authority which the cemetery company could exercise over the portion conveyed was the right to enter upon it for the purpose of keeping the grounds in repair. It had no other beneficial interest in it. As to that portion the widening of the avenue could confer upon the relator no appreciable benefit.

In *Fitzgerald* v. *Faunce*, 46 N. J. L. 536, it was said:

A grant of the exclusive use of lands, as it excludes the grantor from all benefit in it, is a grant of the soil itself, and not a mere easement.

In view of these authorities and the facts that the petitioner has surrendered perpetual and complete control of the 324.4 acres involved herein to the Levee Improvement District, and that it is useless for purposes of cultivation or grazing because almost always overflowed by water, we must hold, for the purposes of this proceeding and for taxation, that the conveyance to the Levee Improvement District was tantamount to a sale and that petitioner has no beneficial interest therein. In all likelihood he could not sell the bare legal title for anything of value. It follows that the consideration received, to wit, $4,866, should not be included in his income for 1920, and that there should be deducted from the remaining gross income the sum of $1,242.45, the amount of petitioner's loss between the cost of the property and the amount he received. *McCaughn* v. *Ludington*, 268 U. S. 106.

*Judgment will be entered on 15 days' notice, under Rule 50.*