### MANCHESTER COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33392. Promulgated November 3, 1931.

*W. S. Pritchard, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

578

OPINION.

TRAMMELL: In 1923 the petitioner expended $829.65 for steel rails and fittings to be used in building extensions of its plant railroad to the site of its mining operations. The railroad so extended did not increase production nor decrease the cost of production, but the extensions were made for the purpose of maintaining the normal output of the mine. The petitioner charged the above amount to expense and deducted it from income for the taxable year. The respondent disallowed the deduction claimed, treated the expenditure as capital, and allowed a deduction for depreciation. On the authority of our decision in the case of *West Virginia-Pittsburgh Coal Co.*, 24 B. T. A. 234, the petitioner is entitled to the deduction.

During the taxable years, the petitioner was engaged in the business of strip-mining coal. The method pursued in extracting the coal is described in detail in our findings of fact above, and will be referred to here only briefly. The petitioner acquired the mineral rights by lease from the Tennessee Coal, Iron & Railroad Company, on condition that it would acquire also the surface rights prior to removal of the coal. This condition was imposed by the lessor for the reason that the coal lay near the surface of the earth and could be mined profitably only by the strip method; that is, by stripping off the over-burden of earth and rock with a steam shovel, thus exposing the seam of coal, and this operation necessarily resulted

in destroying the value of the surface. Pursuant to its agreement with the Tennessee Company, the petitioner acquired title to the surface of the lands in question by purchase for cash from the various fee owners. By these transactions the petitioner became the owner of two separate and distinct property rights, namely, (1) the right to extract and market the coal, acquired by lease, and (2) the surface of the land acquired by purchase. No question is raised in this proceeding with respect to an allowance for depletion of the coal. The sole issue is whether the petitioner is entitled to a deduction from income for the taxable years on account of destruction of the surface of the land resulting from its mining operations in those years.

The petitioner claimed in its returns deductions for "depletion" of the surface, which deductions were disallowed by the respondent, who now contends that his action should be approved substantially for the reason that the mining operations carried on by the petitioner resulted merely in damage to the surface or a reduction in its useful value, which could not be computed until the land is sold. The respondent's position is disclosed in his brief as follows:

Petitioner's claim to depletion, thereby resolves itself into a claim to deduct damage to the surface caused by its mining operations. * * * However, such a deduction whether it be called depletion or damage, or loss, is clearly not allowable, when it is borne in mind that petitioner still owns the surface. * * * Until there has been a sale or other disposition of the property, it is impossible to say whether a gain or loss occurred.

In support of his contention, the respondent cites our decision in *Mrs. J. C. Pugh, Sr., Executrix, et al.*, 17 B. T. A. 429; affd., 49 Fed. (2d) 76, where it was held that shrinkage in value of the surface was not an allowable deduction.

We are unable to accept the premise upon which the respondent's argument is based, and for the same reason we think the decision cited is clearly distinguishable on the facts from the present proceeding.

In the *Pugh* case, it appears that the fair market value of the surface rights in land owned by the petitioners was reduced due to the fact that the land became impregnated with oil and salt water from oil wells drilled thereon and was thereby rendered permanently less fitted for cultivation. And we held that the shrinkage in value was not an allowable deduction from gross income, saying in that connection:

There was a shrinkage in fair market value, but such shrinkage in value does not give rise to a deductible loss, any more than an increase in such value gives rise to income. Until there has been a sale or other disposition of the property it is impossible to say whether a gain or loss will be sustained.

Here a different situation is presented. We have found that the mining operations of the petitioner resulted in the destruction of the entire value of the surface, not merely in an impairment or shrinkage of such value. The petitioner purchased the fee to the surface for cash, and its aggregate expenditures for this purchase constituted a capital investment which was wholly and completely exhausted or lost as the land was strip mined, acre by acre. It is true that after the mining operations were completed the petitioner still owned the surface, but the value for all practical purposes had been completely destroyed. Thereafter the surface had no market value. It had no salable value whatever. It is within the realm of bare possibility that some unforeseen event might occur at some undeterminable time in the future to give some value to the petitioner's remaining surface rights, but such a possibility is too remote, uncertain and speculative to entitle it to consideration in determining tax liability. The land now has no market or salable value, and there is no reasonable prospect of its ever having such a value.

Under the facts here presented, where the land itself is destroyed or the coal is mined, we think that the cost of the land should be added to the cost of the coal in determining the depletion allowable. As each ton is mined a proportionate part of the cost of the land should be attributed to it. We know the number of acres and their cost and the estimated number of tons. The total cost of the land divided by the number of tons of coal would give a fair and reasonable basis for depletion for each ton mined.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

Lansdon and Sternhagen dissent.