## ALSTED COAL CO. v. YOKE.

### No. 6507.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 19, 1952.

Decided Dec. 22, 1952.

O. E. Wyckoff, Grafton, W. Va., for appellant.

Melva M. Graney, Sp. Asst. to the Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., and Howard Caplan, U. S. Atty., Clarksburg, W. Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by a taxpayer in an action against a Collector of Internal Revenue to recover income taxes paid in response to a deficiency assessment. The questions involved relate to the proper treatment for income tax purposes of expenditures made in opening up an abandoned coal mine and recovering by a process of retreat mining the pillar coal which had been left therein. Work began in January 1945 and the District Judge held that expenditures made from that time until June 15, 1945, should be charged to capital recoverable through depletion. Taxpayer contends that they should be deducted from income as ordinary and necessary expenses or, in the alternative, that the mine should be considered as in the developmental stage until October 1, 1945, with deduction of all such expenditures from net receipts. We think that the decision of the District Judge was correct, and that little need be added to his opinion, reported in 104 F.Supp. 606.

. The regulation applicable is Treasury Regulation 111 sec. 29.23(m)—15, which is as follows:

"Sec. 29.23(m)—15. Allowable Capital Additions in Case of Mines.—All

expenditures in excess of net receipts from minerals sold shall be charged to capital account recoverable through depletion while the mine is in the development stage. The mine will be considered to have passed from a development to a producing status when the major portion of the mineral production is obtained from workings other than those opened for the purpose of development, or when the principal activity of the mine becomes the production of developed ore rather than the development of additional ores for mining.

"(b) Expenditures for plant and equipment and for replacements, not including expenditures for maintenance and for ordinary and necessary repairs, shall ordinarily be charged to capital account recoverable through depreciation. Expenditures for equipment (including its installation and housing) and for replacements thereof, which are necessary to maintain the normal output solely because of the recession of the working faces of the mine, and which (1) do not increase the value of the mine, or (2) do not decrease the cost of production of mineral units, or (3) do not represent an amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made, shall be deducted as ordinary and necessary business expenses."

The facts are that taxpayer, the Alsted Coal Company, early in the year 1945 acquired from the Consolidation Coal Company the Gypsy Mine, which had been abandoned 17 years before after all except the "pillar" coal had been removed from it. The purpose of the acquisition was to mine the pillar coal through what is called "retreat" mining, i. e. by working back from a remote portion of the mine toward the entrance and permitting the roof to fall in as the pillars of coal supporting it were removed. During the 17 years that the mine had been lying dormant water had drained into it, timbers supporting the roof had rotted and much debris had ac-

cumulated in the headings and rooms as the result of roof falls. Beginning in January 1945 and continuing until June 15 of that year, expenditures aggregating $33,-148.99 were made in pumping water, clearing debris, retimbering, constructing a tipple, changing an old manway into a haulway, laying rails and pipe, stringing wires and generally doing what was necessary to reach the pillar coal and make possible its removal from the mine.

Until June 15 little or no coal was removed from the mine; but, as the result of the work done and expenditures made prior to that date, it was possible to begin then the removal of the coal and this was continued at the rate of around 13,000 to 14,000 tons per month for the remainder of the tax year. After June 15 expenditures were made in varying amounts for the same purposes as expenditures prior to that date, but the mine had then reached its full production capacity and its principal activity from then on was the removal of the coal which had then been made available and not preparation for reaching additional coal.

Under these circumstances, we think it clear that the expenditures made prior to June 15 should be charged to capital account, as held by the District Judge, and not treated as ordinary and necessary expenses of the business. Even though the mine had been fully developed by the Consolidation Coal Company for the purposes of the sort of mining that it had carried on, the condition into which the property had fallen as a result of the 17 years of abandonment made necessary additional expenditures of capital if the pillar coal was to be removed. While these expenditures were being made, the old mine was just as truly in a developmental status within the meaning of the regulation for the purposes of the contemplated retreat mining as an ordinary mine would be when expenditures are being made preparatory to initial operation. The operation here was not unlike that involved in Repplier Coal Co. v. Com'r, 1 T.C.M. 141, Id., 3 Cir., 140 F.2d 554, where the cost of constructing a tunnel in an old mine to reach a new vein of coal was held properly

charged to capital and not to expense. Like the machinery and construction involved in our recent decision of Commissioner v. H. E. Harman Coal Corp., 4 Cir., 200 F.2d 415, the expenditures added to the value of the mine, and we think that it is clearly required by the regulation that they be capitalized and recovered through deductions for depletion through the life of the mine rather than charged off as expense of a single year.

Directly in point, we think, is the case of Guanacevi Mining Co. v. Com'r, 43 B.T.A. 517, affirmed by the Court of Appeals of the 9th Circuit 127 F.2d 49, 51, in which an old abandoned mine was opened up for operation by new methods and it was sought to charge to expense the cost of driving tunnels to new bodies of ore, erecting an ore mill and purchasing necessary equipment. In holding that these expenditures should be capitalized and not expensed, the Board of Tax Appeals said: "The new cost was not to maintain production by continuing existing methods, but to institute a new method and provide for new production. In practical effect it was an investment in a new mining venture with a new period of development. It was not unlike the opening of a newly discovered mine. The expenditure was therefore a capital investment and not an ordinary and necessary expense of operation." The Court of Appeals of the 9th Circuit in affirming this action of the Board, said:

"The term 'development,' as used in the regulation, may or may not be susceptible of precise definition. Lindley (on Mines, 3d Ed., vol. 1, § 282, pp. 634, 635) seems to believe exact definition of mining terms both difficult and dangerous owing to the technical nature of the subject and the different conditions and surroundings in mining districts. We are certain, however, that the use of the term 'development' is not to be restricted to 'discovery' or 'exploration.' The teaching of the opinions in Marsh Fork Coal Co. v. Lucas, 4 Cir., 42 F. 2d 83, 85, 86, and Enterprise Coal Co. v. Phillips, D.C.Pa., 12 F. Supp. 49, 50, 51, affirmed 3 Cir., 84 F.2d 565, impress upon us that if an expenditure is made to attain an intended output, it is properly chargeable to capital as a cost of development; if the expenditure is made to maintain an output, it is properly chargeable to operating expense.

"We may state, from the findings of the Board, that the high grade ores (for practical and profitable extraction) had been exhausted by 1929; that the lease was terminated July 20, 1931; that the mine did not produce any ore between that date and August 1, 1934. This means that there was no normal output of ore during that period; the normal output had ceased. The low grade ores were made available for working by the driving of two tunnels, without which petitioner would have been unable profitably to extract the low grade ores. The tunnels made available these ores which were theretofore inaccessible. It follows that the expenditures in question were made for the purpose of *attaining* an output, not of *maintaining* an an output, and were, therefore, 'development' expenses properly chargeable to capital, to be recovered through depletion deductions. See 2 Paul and Mertens, Law of Fed.Inc.Taxation, § 21.40, pp. 737–741; Blockton Cahaba Coal Co. v. United States, 5 Cir., 24 F.2d 180, 181."

Taxpayer calls to our attention section 309(a) of the Revenue Act of 1951, 65 Stat. 452, 486, 26 U.S.C.A. § 23(cc), which has changed the treatment of developmental expenditures and permitted them to be charged to expense; but it is expressly provided that the amendments made by that section shall be applicable only to taxable years ending after December 31, 1950. Sec. 309(d), 65 Stat. at page 487, 26 U.S.C.A. § 23 note.

It is clear, also, that the District Judge was right in denying taxpayer's alternative contention, viz., that the mine be considered in developmental stage until October 1, 1945, with right on the part of taxpayer to deduct the expenditures in question

from the net receipts of coal sold prior to that date. After June 15 the mine had passed from "a development to a producing status" to use the language of the regulation, the coal obtained from the mining operation was not from workings opened for the purpose of development and the principal activity of the mine was, not in "developing" additional coal for mining, but in mining that which had been "developed". As said by the District Judge,

"Taxpayer's engineer testified that the contemplated production was attained by June 26. He further testified that all work done in July, August and September was to maintain that production. The same process of cleaning rooms and headings and re-timbering was followed after the mine reached its production stage in order to maintain that contemplated production. The expenditures in question, all made prior to the production of any coal on June 15, were made for the purpose of *attaining* an output and not of *maintaining* an output, and were therefore development expenses, properly chargeable to capital to be recovered through depletion deductions. The expenditures thereafter made were made to maintain production and chargeable as operating expenses." [104 F.Supp. 609.]

This was in accord with the rule laid down by Mr. R. V. Norris, Chairman of the Coal Sub-Committee of the American Institute of Mining and Metallurgical Engineers, quoted with approval by this court in Marsh Fork Coal Co. v. Lucas, 4 Cir., 42 F.2d 83, 86, as follows, viz.:

"Development. The cost of the development of a property to its intended output is properly chargeable to capital. All further development to maintain output is properly operating expense. A mine may be considered developed when there are sufficient working places to produce the designed output, and sufficient entry work in progress to replace exhausted areas and maintain output. Sufficient advance development should be maintained to assure beyond question the

maintenance of output under unfavorable conditions."

There was no error and the judgment appealed from will be affirmed.

Affirmed.