**BEAVER DAM COAL COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 16682.

United States Court of Appeals
Sixth Circuit.

Dec. 29, 1966.

Richard W. Iler and William C. Boone, Jr., Louisville, Ky. (Robert S. Dorsey, Louisville, Ky., on the brief; Bullitt, Dawson & Tarrant, Louisville, Ky., of counsel), for appellant.

Thomas L. Stapleton, Atty., Dept. of Justice, Washington, D. C. (John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief; Ernest W. Rivers, U. S. Atty., Louisville, Ky., of counsel), for appellee.

Before CELEBREZZE and PECK, Circuit Judges, and TAYLOR*, District Judge.

CELEBREZZE, Circuit Judge.

Beaver Dam Coal Company (Appellant) instituted this action to recover income taxes and interest thereon paid as a result of assessments for the calendar years 1957–1961. These assessments arose when the Commissioner of Internal Revenue disapproved the method used by Appellant in determining the depletion deduction on its coal producing properties. The District Court entered judgment for the Government, and Beaver Dam Coal Company appeals.

Appellant's principal business activity consists of the acquisition, ownership, and management of surface lands and the coal thereunder in Ohio County, Kentucky. Substantially all of Appellant's income results from royalties paid to it

* Honorable Robert L. Taylor, Chief Judge, United States District Court, Eastern District of Tennessee, sitting by designation.

by operating companies who, by the strip mining method, recover the coal situated under the lands owned by Appellant. Appellant is not engaged in the mining of coal.

Appellant acquired the coal underlying the surface separately and prior to its acquisition of surface rights in almost all purchases of surface land. In most instances, each tract of land represented the acquisition of surface rights to an entire farm. The tracts range in size from a fraction of an acre to several hundred acres. The percent of total surface acres of a tract overlying strippable coal varied from five percent to one hundred percent; the average for all tracts was approximately forty percent. Appellant often was compelled to buy an entire farm in order to acquire the right to strip acres under which there was coal. While Appellant could not estimate the amount of coal it could recover from a given tract at the time of purchase, Appellant, could determine at the time of purchase the location of coal in a tract of land.

In computing and determining its deduction for depletion, Appellant used the cost method and included in its basis therefor (a) its total cost of the coal underlying the surface; and (b) the total cost of the surface that it was required to buy, whether strippable or not, less the residual value of the surface after strip mining operations terminated. Appellant has abandoned its theory that it was entitled to deduct the total cost of the surface land it was required to buy, whether strippable or not, and now advances the theory that the basis for cost depletion of surface land be equitably apportioned between the surface under which there is recoverable coal and the surface under which there is not such coal.

The Government in computing the depletion deduction by the cost method resulting in the income tax deficiencies in issue, included in Appellant's cost basis therefor only the cost of the coal plus the "proportionate cost" (ratably determined, i. e., on a per acre basis) of that portion of the surface actually destroyed in recovering the coal by the strip mining method. Such "proportionate cost" was determined by the Government by dividing the total price paid for a surface tract by the number of acres in such tract. The resulting per acre cost was attributed ratably to surface acres that will not be stripped as well as to those which were stripped.

The trial court held that the taxpayer was entitled to include in its basis for cost depletion only the cost of the surface lands actually destroyed in extracting the coal by the strip mining process and that the formula used by the Commissioner was proper and constituted a reasonable allowance for depletion as contemplated by Section 611(a) of the 1954 Internal Revenue Code.

Appellant has properly conceded it is not entitled to include in the cost basis the entire cost of the surface land purchased. The Appellant may include only the cost of the surface land actually destroyed by the strip mining operation, Section 1.612–1(b) (ii) Federal Tax Regulations. The narrow question is how is the cost basis of the surface land destroyed determined.

Appellant maintains that since it was compelled to buy an entire farm in order to acquire the right to strip the acres under which there was coal, it was actually paying a premium price for many acres of non-coal producing land. Appellant illustrates its argument by the following examples:

Appellant wants to purchase surface land overlying forty acres of strippable coal which Appellant already owns. This forty acres is part of a hundred acre tract. The actual market value of this one hundred acres of surface land is $30. per acre, or $3,000. for all purposes other than the strip mining of coal. However, Appellant is required to purchase the entire one hundred acre tract for $10,000. Only forty acres are mined. The forty acres destroyed have no residual value. Under the rate method, the cost basis for the forty acres would be $4,000. ($10,000 ÷ 100 = $100. cost of each acre, and forty acres equals $4,000.

cost). Equitably apportioned, Appellant paid $1,800. for sixty acres (60 x $30.) and $8,200. for the forty acres overlying the coal.

26 U.S.C., Section 611(a) provides, in part:

"* * * In the case of mines, oil and gas wells, other natural deposits, and timber, there shall be allowed as a deduction in computing taxable income a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under regulations prescribed by the Secretary or his delegate."

As stated in Parsons v. Smith, 359 U.S. 215, 220, 79 S.Ct. 656, 660, 3 L.Ed.2d 747 (1959):

"The purpose of the deduction for depletion is plain and has been many times declared by this Court. '[It] is permitted in recognition of the fact that the mineral deposits are wasting assets and is intended as compensation to the owner for the part used up in production.' Helvering v. Bankline Oil Co., 303 U.S. 362, 366, 58 S.Ct. 616, 618, 82 L.Ed. 897. And see United States v. Ludey, 274 U.S. 295, 302, 47 S.Ct. 608, 610, 71 L.Ed. 1054; Helvering v. Elbe Oil Land Development Co., 303 U.S. 372, 375, 58 S.Ct. 621, 622, 82 L.Ed. 904; Anderson v. Helvering, 310 U.S. 404, 408, 60 S.Ct. 952, 954 [84 L.Ed. 1277]; Kirby Petroleum Co. v. Commissioner of Internal Revenue, 326 U.S. 599, 603, 66 S.Ct. 409, 411, 90 L.Ed. 343. '[The depletion] exclusion is designed to permit a recoupment of the owner's capital investment in the minerals so that when the minerals are exhausted, the owner's capital is unimpaired.' Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 312, 76 S. Ct. 395, 100 L.Ed. 347. Save for its application only to gross income from mineral deposits and standing timber, the purpose of 'the deduction for depletion does not differ from the deduction for depreciation.' United States

v. Ludey, 274 U.S. at page 303, 47 S.Ct. at page 611. In short, the purpose of the depletion deduction is to permit the owner of a capital interest in mineral in place to make a tax-free recovery of that depleting capital asset."

26 U.S.C., Section 612 provides that "the basis on which depletion is to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain upon the sale or other disposition of such property." Section 1.612–1, Federal Tax Regulations, provides, in part:

"(a) In general. The basis upon which the deduction for cost depletion under section 611 is to be allowed in respect of any mineral or timber property is the adjusted basis provided in section 1011 for the purpose of determining gain upon the sale or other disposition of such property except as provided in paragraph (b) of this section. * * *

"(b) Special Rules. (1) The basis for cost depletion of mineral or timber property does not include: * * *

(ii) The residual value of land and improvements at the end of operations. In the case of any mineral property the basis for cost depletion does not include amounts representing the cost or value of land for purposes other than mineral productions. * * *"

Section 1.61–6, Federal Tax Regulations, provides in part:

"Gain realized on the sale or exchange of property is included in gross income, unless excluded by law. Generally, the gain is the excess of the amount realized over the unrecovered cost or other basis for the property sold or exchanged. The specific rules for computing the amount of gain or loss are contained in Section 1001 and the regulations thereunder. When a part of a larger property is sold, the cost or other basis of the entire property shall be equitably apportioned among the several parts, and the gain realized or loss sustained on the part of the entire property sold is the difference between

the selling price and the cost or other basis allocated to such part. The sale of each part is treated as a separate transaction and gain or loss shall be computed separately on each part. * * * "

As stated in 3A Mertens, "Law of Federal Income Taxation", Section 21.14:

"The word 'equitably' as used in the Regulations, does not mean 'ratably' where a taxpayer purchases land containing parcels so varied in character that he would not pay the same price for the poorer parcels as he would for the better parcels, he will be permitted or required to show by competent evidence the actual proportion of the cost of the entire tract which is properly allocable to the portion sold. In other words, cost should not be apportioned according to area unless the entire area is equally valuable."

Thus, when a mixed aggregate of assets is acquired at one time, it is necessary to allocate the total purchase price among the assets, so as to determine the profit on subsequent sale of specific assets in the group of assets acquired. This is generally based on the relative values at the time of acquisition. 3A Mertens, "Law of Federal Income Taxation", Section 21.32.

The equitable method of apportioning is illustrated by the case of Fairfield Plazza, Inc. v. Commissioner of Internal Revenue, 39 T.C. 706 (1963). The taxpayer purchased a ten acre tract of real estate, located between 16th and 17th Streets in Huntington, W. Va., with the intended purpose of developing the property into a shopping center. Subsequently, in 1957, thirty percent of the property, fronting on 17th Street was sold, and in 1958, another thirty percent, fronting on 16th Street was also sold. The Government took the position that since the property was originally intended to be used for a shopping center, no portion of it had a value greater than that of any other portion.

The Tax Court held the properties should be equitably apportioned among the several parts. The Court found the property fronting on 16th Street was more valuable than the property fronting on 17th Street. Consequently, the cost basis for the 16th Street property for purposes of determining the extent of the gain on the sale was higher than the cost basis on the 17th Street property.

Denise Coal Company v. Commissioner of Internal Revenue, 271 F.2d 930 (C.A. 3, 1959) relied upon by the Government, is not helpful here. There the taxpayer claimed as an ordinary and necessary expense the diminution of the value of land overlying the strip mining operation. The Court held the taxpayer was entitled to take as a part of the total sum which is subject to the depletion allowance the cost basis of the surface land which overlay the coal, and which was destroyed in the strip mining operations. The Court also denied a claim of loss in the value of land adjacent to that which had been strip mined. The Court did not consider the question of how the cost basis of land overlying coal should be determined.

Since the basis on which depletion is to be allowed is found by the same method used in computing the gain or loss on the sale of the property, then recognition must be given to the relative values of the land purchased by Appellant.

Here Appellant was required to pay a premium price for land under which there was no coal in order to acquire the right to strip acres under which there was coal. Appellant could determine from topographical maps and engineering surveys the location of the coal. Appellant then purchased the land solely to mine the coal. Appellant should be allowed to equitably apportion the actual cost between the land overlying coal and the remainder of the farmland. This is in keeping with the purpose of the depletion allowance which is designed to permit the owner to recoup his capital investment, and thus make a tax free recovery of his depleting capital asset. It is only under the equitable apportionment method that Appellant recoups his actual capital investment in the coal producing properties. The Appellant, however, has the burden of establishing by competent

evidence the proportionate cost or value of each portion of land as of the date of purchase.

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

ROBERT L. TAYLOR, District Judge (dissenting).

In all deference, I feel that the judgment of the District Court should be affirmed. The Supreme Court has said that the depletion allowance is "solely a matter of legislative grace." Helvering v. Bankline Oil Co., 303 U.S. 362, 363, 58 S.Ct. 616; Parsons v. Smith, 359 U.S. 215, 219, 79 S.Ct. 656; Paragon Jewel Coal Co. v. Commissioner of Internal Revenue, 380 U.S. 624, 631, 85 S.Ct. 1207, 14 L.Ed.2d 116. The formula proposed by appellant and adopted by the Court for arriving at a cost basis for the depletion allowance would open the way for recovery of the full cost of many acres through the stripping of a few. The opportunities thus presented for profiting at the expense of the public would be abundant. I think no such result was intended by the statute and regulations. As the Supreme Court said in Paragon Jewel Coal Co. v. Commissioner of Internal Revenue, supra:

"This Court has often said that the purpose of the allowance for depletion is *to compensate the owner of wasting mineral assets for the part exhausted in production,* so that when the minerals are gone, the owner's capital and his capital assets remain unimpaired. * * *" (Emphasis added.)

See also Mertens, Law of Federal Income Taxation, Vol. 4, Sec. 24.03:

"(a) *Cost Depletion.* Cost depletion is based upon the cost * * * *value of the particular deposit* to the taxpayer. The purpose of such depletion is to return to the taxpayer free of tax that portion of the cost attributable to the amount of mineral or other natural resource exhausted or used up in earning the income on which he is taxed during the particular taxable year * * *." (Emphasis added.)

I think that the District Court properly apprehended and decided the issues in this case and that the cause should be affirmed for the reasons stated in its opinion. Beaver Dam Coal Company v. United States, 235 F.Supp. 106 (D.C. W.D. Ky.)