GEOGHEGAN & MATHIS, INC., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1295–68.     Filed January 27, 1971.

---

[3] Notes against which the offsets were made were reflected as assets in the estate tax return.

*David W. Gray* and *James E. Fahey*, for the petitioner.
*W. Gerald Thornton*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in the income taxes of petitioner as follows:

| FYE— | Deficiency |
|---|---|
| Feb. 28, 1963 | $7, 924. 65 |
| Feb. 29, 1964 | 6, 469. 53 |
| Feb. 28, 1965 | 15, 917. 53 |

The parties have disposed of all the issues except that relating to a deduction in 1965 under section 616(a) or section 162(a)[1] for a certain claimed development expenditure relating to petitioner's limestone quarry.

All of the facts have been stipulated and are found accordingly.

Petitioner, Geoghegan & Mathis, Inc., is a Kentucky corporation whose principal place of business, at the time of filing the petition herein, was Bardstown, Ky. Its return for the taxable year ending February 28, 1965, was timely filed with the district director of internal revenue, Louisville, Ky.

Petitioner's principal business is the operation of limestone quarries. In 1959, petitioner purchased the fee title to a tract of land near Bardstown, Ky. Prior to petitioner's purchase, it had been determined that the tract contained limestone in commercially marketable quantities and that such limestone lay under the entire surface of the tract.

A gas pipeline crossed the central portion of the tract purchased by petitioner. The owner of the pipeline, Louisville Gas & Electric Co. (hereinafter the utility company), possessed a perpetual right-of-way or easement across the tract for the purpose of constructing and maintaining this pipeline. Petitioner's title to the tract was specifically made subject to this right-of-way. The right-of-way agreement contained the following clause:

The said grantors, their heirs, personal representatives and assigns, shall have the right fully to use and enjoy the said premises except for the purposes herein granted to said grantee, his heirs, personal representatives and assigns.

In 1959, petitioner began extracting the limestone on the western boundary of the tract by using the open-pit method. This method utilized a vertical mining face and a horizontal mining floor. The original face and floor were established by excavation. Subsequently, the method by which the limestone was removed involved essentially two steps. First, the earth overburden which covered the limestone forma-

---

[1] All references are to the Internal Revnue Code of 1954 unless otherwise specified.

tions was removed by excavation. Second, the limestone was removed from the face of the mine by blasting and drilling.

As more limestone was extracted, petitioner's mining operations necessarily came closer to the pipeline. The existence of the pipeline and the right-of-way impeded further mining operations. The existing mining face could no longer be advanced unless the pipeline were removed.

Petitioner's officers negotiated with the utility company concerning relocation of the pipeline. On January 15, 1964, an agreement was reached whereby petitioner granted the utility company a new easement or right-of-way around the northern and eastern edges of the tract and the utility company surrendered its old right-of-way or easement to petitioner. As part of the arrangement, petitioner also agreed to bear the costs of relocating the pipeline on the new easement or right-of-way.

During petitioner's taxable year ending on February 28, 1965, the pipeline was relocated at a cost to petitioner of $14,682.78, which petitioner deducted as a development expenditure in addition to its deduction for depletion. Petitioner's continuing mining operations subsequently extended the mining face into that portion of the tract which was originally northeast of the earlier location of the pipeline.

Resolution of the issue in this case turns upon whether the cost to petitioner of relocating the utility company's pipeline represents, as petitioner contends, a development expenditure deductible under section 616(a)[2] or an ordinary and necessary business expense deductible under section 162(a) or, as respondent contends, a capital item chargeable to petitioner's depletion account. In essence, petitioner argues that the expenditure added nothing to its full rights to the limestone stemming from its fee ownership of the land, was a mere cost of exploiting its preexisting rights, and was consequently a legitimate development expenditure. Respondent counters with the argument that the expenditure was an essential element in the acquisition by petitioner of a right

---

[2] SEC. 616. DEVELOPMENT EXPENDITURES.

(a) IN GENERAL.—* * * [T]here shall be allowed as a deduction in computing taxable income all expenditures paid or incurred during the taxable year for the development of a mine or other natural deposit (other than an oil or gas well) if paid or incurred after the existence of ores or minerals in commercially marketable quantities has been disclosed. This section shall not apply to expenditures for the acquisition or improvement of property of a character which is subject to the allowance for depreciation provided in section 167, but allowances for depreciation shall be considered, for purposes of this section, as expenditures.

The predecessor of sec. 616(a) was sec. 23(cc) of the 1939 Internal Revenue Code, added by sec. 309(a), Revenue Act of 1951, 65 Stat. 486–487. See S. Rept. No. 781, Part 2, 82d Cong., 1st Sess., pp. 21–22, 1951–2 C.B. 559, for a clear statement of the purposes of sec. 23(cc). See also H. Rept. No. 586 (Ways and Means Committee), 82d Cong., 1st Sess., pp. 30–31, 107–108, 1951–2 C.B. 379–380, 434–435; S. Rept. No. 781, Part 1 (Finance Committee), 82d Cong., 1st Sess., pp. 43–45, 1951–2 C.B. 489–490; S. Rept. No. 781, Part 2 (Finance Committee Supp. Rept.), 82d Cong., 1st Sess., pp. 21–22, 1951–2 C.B. 558–560; H. Rept. No. 1213 (Conference Committee), 82d Cong., 1st Sess., p. 71, 1951–2 C.B. 625–626; Report of Staff of Joint Committee on Internal Revenue Taxation (Oct. 1951), pp. 25–26, 1951–2 C.B. 306–307.

of access, that it represented the cost of obtaining a property right, that realistically it should be treated as part of the cost of the mineral rights themselves, and that therefore it is not a deductible expense but rather a depletable item. We agree with respondent.

The thrust of petitioner's argument with respect to section 616(a) is that, since the purpose of its arrangements with the utility company was to obtain access to the limestone with respect to which it already owned all mineral rights, its expenditure for relocation of the pipeline falls within the same category as expenditures for roads with respect to an open-pit mine (*Amherst Coal Co.* v. *United States*, 295 F. Supp. 421 (S.D. W. Va. 1969)) or shafts and tunnnels with respect to subsurface mining (see *United States Gypsum Co.* v. *United States*, 206 F. Supp. 744, 753 (N.D. Ill. 1962); S. Rept. No. 781, 82d Cong., 1st Sess.). Compare *Clear Fork Coal Co.*v. *Commissioner*, 229 F. 2d 638, 643–644 (C.A. 6, 1956), reversing 22 T.C. 1075 (1954); *Repplier Coal Co.* v. *Commissioner*, 140 F. 2d 554 (C.A. 3, 1944), affirming a Memorandum Opinion of this Court; *Alsted Coal Co.* v. *Yoke*, 104 F. Supp. 606 (N.D. W.Va. 1952), affd. 200 F. 2d 766 (C.A. 4, 1952); *Guanacevi Mining Co.* v. *Commissioner*, 127 F. 2d 49 (C.A. 9, 1942), affirming 43 B.T.A. 517 (1941). See also *Commissioner* v. *H. E. Harman Coal Corp.*, 200 F. 2d 415, 418 (C.A. 4, 1952). In so arguing, petitioner relies heavily on *Kennecott Copper Corporation* v. *United States*, 347 F. 2d 275 (Ct. Cl. 1965).

It cannot be gainsaid that petitioner had, prior to the arrangement with the utility company, been vested with fee title to the minerals themselves. But the fact remains that the *right* of access to those minerals was impaired by the right of the utility company to maintain its gas pipeline in perpetuity by virtue of the right-of-way agreement—a right which had sufficient attributes to. be considered an interest in property. Cf. *Inaja Land Co., Ltd.*, 9 T.C. 727 (1947); *H. L. Scales*, 10 B.T.A. 1024 (1928). Compare also *Ebb B. Nay*, 19 T.C. 114 (1952); *Louis W. Ray*, 18 T.C. 438, 441 (1952), affd. 210 F. 2d 390 (C.A. 5, 1954). Petitioner seeks to avoid this hard fact by pointing to the provision in the right-of-way agreement that "The said grantors, their heirs, personal representatives and assigns, shall have the right fully to use and enjoy the said premises." In so doing, however, petitioner conveniently ignores the further qualifying language in that same provision, which adds "except for the purposes herein granted to said grantee, his heirs, personal representatives and assigns." Such qualifying language clearly impairs the prior reservation of full use and enjoyment.

We think it clear that by its arrangement with the utility company petitioner eliminated a property interest in favor of the latter and acquired a *right* of access to the minerals which it did not previously have. Whatever may be the limits of the deductibility of expendi-

tures for exploiting rights of access in the area of open-pit mining,[3] either as development expenses under section 616 or as ordinary and necessary expenses under the so-called receding-face doctrine (see sec. 1.612–2, Income Tax Regs.),[4] we think that payments for *rights of access* should not be included therein.[5] Compare *Commissioner* v. *Southwest Exploration Co.*, 350 U.S. 308 (1956). Such payments in reality represented an additional investment in petitioner's limestone deposit and, in our opinion, do not fall within the scope of "activity necessary to make a deposit accessible for mining." See *Santa Fe Pacific Railroad Co.* v. *United States*, 378 F. 2d 72, 76 (C.A. 7, 1967); *Amherst Coal Co.* v. *United States*, 295 F. Supp. at 441. The payment was for a *right* to engage in an activity, not an expense of carrying out the activity as such.

We recognize that the approach of *Kennecott Copper Corporation* v. *United States, supra*, supports a contrary view. But, in our judgment, the Court of Claims in that case failed to distinguish between a payment for a right of access and a payment to exploit an unimpaired right of access which concededly exists. Moreover, by emphasizing the purpose of the payor as distinguished from the objective fact of what was obtained for the payment, the Court of Claims seems to open the door to the deductibility under section 616 of the costs of creeping acquisitions of surface rights necessary to continue an open-pit mining operation—a result which would do violence to the proper concept of the term "development expenditures." Cf. *Denise Coal Co.*, 29 T.C. 528, 550–551 (1957); *Manchester Coal Co.*, 24 B.T.A. 577 (1931). To the extent that the *Kennecott* case may be read to reach the conclusion urged by petitioner herein, we respectfully decline to follow it.

Perhaps in anticipation of our focussing on its acquisition of a right of access in the form of an interest in property represented by the outstanding right-of-way, petitioner has, in the alternative, sought to dissect the arrangements between it and the utility company. Thus, it contends that the consideration for the release of the right-of-way

---

[3] The legislative history, as well as the judicial and administrative treatment of the problem from as early as the Revenue Act of 1918, indicates that determinations were guided mainly by the experiences of subsurface mining operations. See Alexander & Grant, "Mine Development and Exploration Expenditures," 8 Tax L. Rev. 401 (1952). See also *Kennecott Copper Corporation* v. *United States*, 347 F. 2d 275, 286–312 (Ct. Cl. 1965); Levy and Simonds, "Capitalization of Mining Expenditures," 26 Taxes 203 (1948). Cf. *Enterprise Coal Co.* v. *Phillips*, 12 F. Supp. 49 (M.D. Pa. 1935) (discussion of accounting for purchase of additional property), affirmed per curiam 84 F. 2d 565 (C.A. 3, 1936).

[4] Compare Rev. Rul. 67–169, 1967–1 C.B. 159; Rev. Rul. 67–35, 1967–1 C.B. 159; Rev. Rul. 66–170, 1966–1 C.B. 159.

[5] We are bolstered in our conclusion that a distinction should be drawn between expenditures for rights of access and those simply to exploit rights of access by the cases holding that a portion of the cost of land not necessary for mining a deposit can and should be allocated to the basis for determining cost depletion. *Beaver Dam Coal Co.* v. *United States*, 370 F. 2d 414 (C.A. 6, 1966); *Potts Run Coal Co.*, 19 B.T.A. 1, 5 (1930).

was solely the furnishing by petitioner of a substitute right-of-way and that, petitioner having thus obtained the unimpaired right of access, the payment of the cost of relocating the gas pipeline was simply an expenditure for exploiting its right of access. We disagree. We think it completely unrealistic to conclude that the utility company bargained its right-of-way exclusively for another right-of-way. It is clear to us that the bargain was the existing right-of-way and pipeline for another right-of-way *and* relocation of that pipeline. Nuances in language contained in the written documents and the lapse of time between the release of the right-of-way and the grant of the new right-of-way, on the one hand, and the formal undertaking to pay the relocation costs, on the other, are not persuasive. The arrangements between the petitioner and the utility company encompassed a single transaction. Cf. *Kennecott Copper Corporation* v. *United States*, 347 F. 2d at 280, 283.

The foregoing rationale is equally dispositive of petitioner's further claim that such expenditures constitute an ordinary and necessary business expense under section 162(a). Compare *Mt. Morris Drive-In Theatre Co.*, 25 T.C. 272 (1955), affirmed per curiam 238 F. 2d 85 (C.A. 6, 1956); *Hotel Sulgrave, Inc.*, 21 T.C. 619 (1954). In this connection, we note, without expressing an opinion with respect thereto, that petitioner offered no evidence as to its prior practice or the practice of the industry with respect to expeditures such as are involved herein. Compare *Kennecott Copper Corporation* v. *United States*, 347 F. 2d at 3 00–305; see *Welch* v. *Helvering*, 290 U.S. 111, 113–115 (1933).

*Decision will be entered under Rule 50.*