**GEOGHEGAN & MATHIS, INC.,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 71–1439.

United States Court of Appeals,
Sixth Circuit.

Jan. 28, 1972.

David W. Gray, Louisville, Ky., for appellant; James E. Fahey, Louisville, Ky., on brief.

Richard Halberstein, Tax Div., Dept. of Justice, Washington, D. C., for appellee; Fred B. Ugast, Acting Asst. Atty. Gen., Meyer Rothwacks, Bennet W. Hollander, Richard Halberstein, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before EDWARDS and PECK, Circuit Judges, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

This is an appeal by the taxpayer, Geoghegan & Mathis, Inc., of Bardstown, Kentucky, to review a decision of the United States Tax Court which is reported at 55 T.C. 672 (1971). The only issue for determination concerns the deductibility for federal income tax purposes of $14,682.78 paid by the tax-payer-appellant during its taxable year ended February 28, 1965.

The appellant is a Kentucky corporation whose principal place of business is at Bardstown, Kentucky, and whose principal business is the operation of limestone quarries. In 1959, the appellant purchased the fee simple title to a tract of land near Bardstown. Prior to appellant's purchase, it had been determined that the tract contained limestone in commercially marketable quantities and that such limestone lay under the entire surface of the tract.

An eight inch gas pipeline diagonally crossed the central portion of the tract approximately thirty inches below the surface. The owner of the pipeline, the Louisville Gas & Electric Company, possessed a perpetual easement for the pur-

pose of constructing and maintaining this pipeline.

In 1959, the appellant began extracting the limestone on the western boundary of the tract, using the open-pit or open-face method of mining. The operation progressed from the west side of the property toward the east and northeast side. Mining operations were not initially affected by the pipeline, but by late 1963 the mining face had been brought near the pipeline. As the vertical face of the pit moved with the mining process, it necessarily came closer to the existing pipeline right of way. Ultimately the existing mining face could no longer be advanced unless the pipeline was removed.

Appellant's officers therefore entered into negotiations with the utility company concerning relocation of the easement and pipeline. A "Grant and Release of Easement" was executed on January 16, 1964, by the appellant and the utility company which released the existing right of way through the center of the tract and granted to the utility company a new easement around the eastern and northern boundaries of the tract. As part of the arrangement, the appellant agreed to bear the costs of relocating the pipeline within the new right of way. The relocation work was performed during 1964, and on December 4, 1964, the utility company invoiced the appellant for the cost of relocation in the amount of $14,682.78, which appellant paid on December 28, 1964. After relocation of the pipeline, the mine face was extended to the eastern portion of the tract.

In its federal income tax return for its taxable year ended February 28, 1965, the appellant claimed a deduction for the payment of $14,682.78 as a development expense under § 616(a) of the Internal Revenue Code of 1954.[1] The

[1] Section 616(a) of the Internal Revenue Code of 1954 provides:
"Except as provided in subsection (b), there shall be allowed as a deduction in computing taxable income all expendi-

tures paid or incurred during the taxable year for the development of a mine or other natural deposit (other than an oil or gas well) if paid or incurred after the existence of ores or minerals in com-

claimed deduction was disallowed by the Commissioner of Internal Revenue on the ground that the amount represented the cost of acquisition of land. All of the facts and exhibits were fully stipulated, and the Tax Court concluded that the payment in question represented the cost of a real property interest and as such could not be deducted, and upheld the Commissioner's determination of disallowance.

The appellant's main contention at trial and on appeal is that the sum expended for relocation of the pipeline and right of way was entirely deductible that year as a development expenditure as provided by § 616(a) of the Internal Revenue Code of 1954. The Commissioner's position is that the expenditure was not a development expense within the scope of this section but was a part of the capital cost of mineral rights to the limestone.

Section 616(a) allows a current deduction from taxable income for any expenditures incurred for the development of a mine if paid or incurred after the existence of minerals in commercially marketable quantities has been disclosed. There is no question that appellant's expenditures for relocation were incurred after the existence of minerals in commercially marketable quantities had been disclosed. Thus the only question here is whether the payment was "for the development of a mine or other natural de-

posit," as required before a deduction may be taken under § 616(a).

Because "development" expenditures are not defined in the statute, an examination of the legislative history and judicial interpretations of this section is necessary to ascertain the intended scope of the term. Prior to 1951, mining development expenses were deductible during the "production" stage of a mining operation. Such expenses were considered as currently deductible operating expenses (or if extraordinary, deductible ratably as the benefited minerals were mined and sold). However, development expenses incurred after discovery of minerals, but during the mine's "development" stage, were required to be capitalized and were recoverable only through deductions for depletion. E. g., see Clear Fork Coal Co. v. Commissioner of Internal Revenue, 229 F.2d 638 (6th Cir. 1956). In 1951, section 23(cc) of the Internal Revenue Code of 1939 was enacted to provide that all "development" expenses incurred after commercially marketable quantities of minerals were disclosed became currently deductible, whether incurred during the development or production stage of operation. The legislative history[2] of this enactment is relevant in that it clarifies what congress and the industry understood by the term "development expense."

■ The Committee reports accompanying Section 23(cc) indicate specific

mercially marketable quantities has been disclosed. This section shall not apply to expenditures for the acquisition or improvement of property of a character which is subject to the allowance for depreciation provided in section 167, but allowances for depreciation shall be considered, for purposes of this section, as expenditures."

2. Section 23(cc) of the Internal Revenue Code of 1939, added by section 309(a), Revenue Act of 1951, 65 Stat. 452, 486–487 was the predecessor of section 616 (a) of the 1954 Code. See S.Rept. No. 781, Part 2, 82nd Cong., 1st Sess., pp. 21–22, 1951–2 C.B. 545, 559, for a clear

statement of the purposes of section 23 (cc). See also H.Rept. No. 586 (Ways and Means Committee) 82nd Cong., 1st Sess., pp. 30–31, 107–108, 1951–2 C.B. 357, 379–380, 434–435; S.Rept. No. 781, Part 1 (Finance Committee), 82nd Cong., 1st Sess., pp. 43–45, 1951–2 C.B. 458, 489–490; S.Rept. No. 781, Part 2 (Finance Committee Supp. Rept.), 82nd Cong., 1st Sess., pp. 21–22, 1951–2 C.B. 545, 558–560; H.Rept. No. 1213 (Conference Committee), 82nd Cong., 1st Sess., p. 71, 1951–2 C.B. 622, 625–626; Report of Staff of Joint Committee on Internal Revenue Taxation (Oct. 1951), pp. 25–26, 1951–2 C.B. 387, 306–307.

legislative intent to provide statutory assurance that mining operators using the percentage depletion method should be allowed a full and separate deduction for development expenditures. From a study of the legislative history of this section and of the cases arising under it we find that the commonly accepted definition of development expense, "that activity necessary to make a deposit accessible for mining," to be consistent with the legislative intent and with virtually all the decisions treating this code section. (E. g.: Santa Fe Pacific Railroad Co. v. United States, 378 F.2d 72, 76 (7th Cir. 1967); Amherst Coal Co. v. United States, 295 F.Supp. 421, 441 (S. D.W.Va.1969).)

The appellant relies predominately upon the decision of the Court of Claims in Kennecott Copper Corp. v. United States, 347 F.2d 275, 171 Ct.Cl. 580 (1965). The Commissioner's position is that *Kennecott* was wrongly decided and should not be followed. The Tax Court recognized that *Kennecott* "supports a contrary view," and declined to follow it. 55 T.C. at 676.

In *Kennecott*, the taxpayer owned and operated a copper mine using the "open pit" method of stripping. From time to time it became necessary to widen the pit, causing the outside circumference of the mine to become larger and necessitating the moving of facilities and outbuildings further and further from the center. When the outer circle reached one boundary of Kennecott's property, negotiations were made with the neighboring owner, United States Smelting Refining and Mining Company (USSRMCO), with the resulting agreement that Kennecott would receive easements, rights and privileges over, on and under various surface tracts to strip, dump and leach (a process which obtains ore from waste earth). Kennecott received rights to only some of the minerals under the surface and obligated itself to replace all of USSRMCO's facilities that would be destroyed in the process. There was no conveyance of any

fee interest to Kennecott. In consideration for all of the rights acquired, Kennecott paid USSRMCO about 14.5 million dollars, which Kennecott amortized over a nine-year period as an ordinary and necessary expense of mining. The Commissioner contended that the expenditures made by Kennecott to acquire the various surface rights from USSRMCO should have been capitalized and returned to Kennecott through annual depletion charges, rather than being deducted as an ordinary expense.

The Court of Claims concluded that where surface rights were acquired in order to provide access to minerals of a producing mine, the expense of acquiring them was more related to their exploitation than to their acquisition, and therefore that Kennecott's expenses could be deducted as "development expenses." 347 F.2d at 312.

In permitting Kennecott to amortize its $14.5 million expense in full over a brief period of years, the Court of Claims permitted the amortization of the full amount notwithstanding the finding that some part of the payment was for all the other rights acquired, including the main right to strip the surface, payment for which would admittedly be capitalized and recovered by depletion. More importantly, while recognizing the distinction "between the cost of acquiring the surface rights and the costs of exploiting them," the Court allowed Kennecott to amortize the replacement costs as being for "acquisition," not for exploitation of the surface. 347 F.2d at 285.

■ The appellant owned the fee title to all the minerals in the tract of land in question. When it purchased the land the company was aware of the dominant estate owned by the gas company for its pipeline. The appellant was also aware of the fact that access could not be had to the limestone without relocation of the pipeline; therefore, the right of access to the minerals was impaired by the right of the utility company to maintain its pipeline through the center of the

**1328**

tract. The purchase of this right and the concomitant relocation of the pipeline by the appellant was an essential element in the acquisition of the right of access to the minerals, and therefore must be treated as part of the cost of the mineral rights themselves. It is a depletable item, and not deductible under § 616(a).

We decline to follow the *Kennecott* decision because we feel that the Court of Claims failed to distinguish between the payment for a right of access to minerals and the payment for exploitation of minerals to which a right of access already exists. There is no "activity" involved in the former, and thus expenses for payment of a right of access should not be deducted as development expenses.

The Tax Court's holding that the cost of obtaining the right to acquire access to minerals was not currently deductible is in accord with the decision of this Court in Beaver Dam Coal Co. v. United States, 370 F.2d 414 (6th Cir. 1966). In that case, the owner of coal rights below the surface separately purchased surface rights so that operating companies could strip to reach the coal. The owner was often forced to purchase much more surface area than he needed at a price higher than the non-coal area would normally command. This Court held that the company should add to its depletable cost basis of the minerals not only the per acre cost of the surface to be destroyed, but also the premium paid for the non-coal acres in excess of the fair market value. Thus, the cost to the company of the land it did not need was for acquisition of the right to strip mine the desired surface, which is the right to obtain access to the coal. This expenditure was therefore properly capitalized and recovered through depletion. 370 F.2d at 417.

For the reasons hereinabove set forth, and for those contained in the opinion of the Tax Court, 55 T.C. 672 (1971), *supra*, the judgment of that court is affirmed.